255 N.J. Super. 514 (1992)
605 A.2d 757
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM MILTON, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 31, 1992.
Decided April 16, 1992.
*515 Before Judges PRESSLER and SHEBELL.
Edward P. Hannigan, Deputy Public Defender II, argued the cause for appellant (Wilfredo Caraballo, Public Defender, attorney, Edward P. Hannigan, of counsel and on the brief).
*516 Marsetta Lee, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney, Marsetta Lee of counsel and on the letter brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Defendant, William Milton, Jr., was tried to a jury and convicted of possession of cocaine (N.J.S.A. 2C:35-10a(1) and N.J.S.A. 2C:2-6) and possession of cocaine with intent to distribute (N.J.S.A. 2C:35-5a(1), N.J.S.A. 2C:35-5b(2) and N.J.S.A. 2C:2-6). His conviction for simple possession was merged into his conviction for possession with intent to distribute, and he was sentenced to a term of six years of imprisonment. Appropriate Drug Enforcement and Demand Reduction penalties, lab fees, Violent Crimes Compensation Board penalties, and revocation of driving privileges were imposed.
Defendant appeals his conviction and sentence alleging:
POINT I: THE PROSECUTOR'S REFERENCE TO THE ISSUANCE OF A SEARCH WARRANT FOR THE PERSON OF THE DEFENDANT, AS DISTINCT FROM HIS REFERENCE TO THE ISSUANCE OF A SEARCH WARRANT FOR THE MILTON HOME, IN COMBINATION WITH INVESTIGATOR MARC ROSSI'S TESTIMONY CONCERNING THE FORMER WARRANT'S EXISTENCE, CONSTITUTED INADMISSIBLE HEARSAY AND DEPRIVED DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO CONFRONT HIS ACCUSERS. THE TRIAL JUDGE'S LIMITING INSTRUCTION WAS MISLEADING AND INEFFECTIVE, A CONCLUSION ATTESTED TO BY THE QUESTION WHICH THE JURY ASKED THE COURT CONCERNING THE WARRANTS DURING DELIBERATIONS.
POINT II: THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL AT THE END OF THE STATE'S CASE.
POINT III: THE DEFENDANTS SENTENCE IS EXCESSIVE AND AN ABUSE OF THE TRIAL COURT'S DISCRETION.
We agree with defendant's contentions as raised in Points I and II, and we, therefore, reverse defendant's convictions and remand the matter to the Law Division for the entry of a judgment of acquittal.
The indictment upon which defendant was tried named him and his brother, Christopher Milton, as codefendants and alleged *517 in Count One that on February 3, 1989, in Trenton, New Jersey, they "did knowingly or purposely possess, actually or constructively, a controlled dangerous substance, to wit: cocaine, ...." Count Two alleged that the codefendants at the same time and place "did knowingly or purposely possess or have under their control with intent to distribute a controlled dangerous substance, to wit: cocaine, in a quantity of one-half ounce or more but less than five ounces, including any adulterants or dilutants, ...." Christopher Milton apparently accepted a plea bargain and pleaded guilty to an unspecified charge in connection with the indictment. Therefore, only defendant proceeded to trial.
We accept and set forth verbatim the counter-statement of facts contained in the State's brief on appeal:[1]
On February 3, 1989, at approximately 6:00 p.m., members of the Special Investigations Unit of the Mercer County Prosecutor's Office executed a search warrant at 82 Norman Avenue, in Trenton. This was the residence of defendant's mother, Ester Milton. In addition to Mrs. Milton, codefendant (defendant's brother) and William Milton, Sr. (defendant's father) were on the premises when the law enforcement agents entered the dwelling. The agents also had a search warrant for defendant, but he was not home.
The officers searched the entire house, including the three bedrooms on the second floor. While searching codefendant's bedroom, the officers found a shoe box which contained two small ziplock bags with a white substance which the officers suspected was cocaine. Three pieces of identification bearing codefendant's name were found in the shoe box. Codefendant was arrested at the scene.
The officers then searched the middle bedroom which was defendant's bedroom. They retrieved several documents from the top of the dresser, one of which was a New Jersey State Department of Labor unemployment stub. The stub bore defendant's name (William Milton, Jr.), his social security number (XXX-XX-XXXX), and his address (82 Norman Avenue). The remaining documents bore the name "William Milton." The officers discovered a brown paper bag hidden under the mattress of defendant's bed. The bag contained an off-white, rock-like substance which they suspected was crack cocaine. In the third bedroom, which was Mrs. Milton's bedroom, the officers discovered several *518 documents with both her name and William Milton Sr.'s (defendant's father's) name. No contraband was found in Mrs. Milton's bedroom.
Investigator Rossi, who was assigned as the evidence officer, documented all the items seized during [sic] raid and subsequently forwarded them to the state police laboratory for analyses. Laboratory analyses showed that the substances found in both bedrooms tested positive for cocaine.
Based on the narcotics found in defendant's bedroom, a warrant was issued for his arrest. On February 23, 1989, the police returned to the same residence they had previously raided to execute the warrant. This time defendant was present and was placed under arrest. He was then transported to the police station. As he was being processed, defendant disclosed his social security number. That number matched the social security number on the document that the police had previously discovered in defendant's bedroom during the search that uncovered cocaine under the mattress of the bed.
At trial, Investigator Martin Levandowski, a qualified expert in the field of identification, use, packaging, preparation and distribution of controlled dangerous substance, testified that the 34.30 grams of cocaine found in the brown bag of [sic] middle bedroom was possessed with the intent to distribute.
At trial, defendant and his brother, Nathan Barber (a/k/a Nathanial Milton and Soyica Gimbu) testified on behalf of the defense. Defendant admitted that he lived at the residence where the raid occurred. He also admitted that he occupied the middle bedroom where the cocaine had been found. Defendant, however, denied that the cocaine was his. Nathan Barber, defendant's brother who was presently serving a sentence on an armed robbery conviction, testified that the cocaine hidden in defendant's bedroom belonged to him, and not defendant. Barber claimed that he told defendant that the drugs were his (Barber's). However, defendant had been incarcerated for more than a month when his brother purportedly confessed to him. [Transcript references omitted; footnote omitted].
Following the denial of defendant's acquittal motion at the end of the State's case, the defense presented evidence that the cocaine belonged to defendant's other brother, Nathanial Milton, and that defendant had no knowledge of the presence of the drug in the middle bedroom which he shared with Nathanial. Prior to testifying on defendant's behalf, Nathanial was advised by counsel of his right to refuse to testify and of the penal consequences of his testimony. Nathanial testified that the cocaine found in the bedroom was under the mattress of the bottom bunk which he used. He testified that as far as he knew defendant had no knowledge of the cocaine and was not in any way involved in the use or distribution of drugs. Nathanial asserted that he was addicted to crack at the time and had *519 stolen the drugs from a drug dealer. He maintained that he could himself consume the quantity of the drug found in only a couple of days and that he had no intent of distributing it. Nathanial, at the time of trial, was in custody in connection with unrelated armed robberies.

I.
We are satisfied that the State failed to make out a prima facie case against defendant. Nevertheless, we choose to address the issue raised in Point I of defendant's brief wherein he asserts that it was improper for the prosecutor to make reference to the existence of a search warrant for the person of the defendant. The prosecutor referred to a search warrant for the person of the defendant both in his opening statement and by eliciting evidence of its existence through the testimony of the State's investigator.
Defense counsel objected following the opening statement of the prosecutor because the prosecutor had told the jury that the police "had a search warrant for the residence, and they had a search warrant for William Milton, Jr., the defendant who sits before you." Defense counsel moved for a mistrial because of the prosecutor's remark and, throughout the trial preserved his objection to evidence of the personal search warrant and the court's limiting instruction.
The State's attempt to justify the prosecutor's references to the warrant to search the defendant personally is without merit. The defendant was not present at the premises when the State's investigators broke into the premises utilizing a no-knock search warrant for the residence. The record does not disclose that the search warrant for the person of the defendant was ever executed. After the search of the home, no arrest warrant for the defendant was issued for several days, and the arrest warrant itself was not executed until February 23, 1989, almost three weeks after discovery of the cocaine.
*520 The prosecutor argued at trial "that the jury should be informed that the officers had proceeded to the house to execute valid search warrants to refute any suggestion that the officers had acted arbitrarily." This alleged purpose in mentioning the presence of a search warrant could have been fully accomplished by the prosecutor's reference only to the existence of a search warrant for the premises that were invaded. See State v. Bankston, 63 N.J. 263, 268, 307 A.2d 65 (1973).
As noted in the State's brief, "[t]he prosecutor further asserted that the jury could not reasonably infer defendant's guilt from the mere mention that warrants had been issued." This is not so. Rather, the defendant was unquestionably prejudiced by the mention of the existence of a warrant to search his person. The natural inference from the mention of the warrant itself, confirmed by the cautionary instruction of the trial judge, was that sufficient independent proof had been presented to a neutral judge to believe that defendant would be found in possession of drugs. The trial judge's explanation to the jury that the burden of proof for a search warrant was less than that required for conviction at trial served to support this prejudicial inference.
We are convinced that there was no materiality or relevance between the existence of a warrant to search the person of the defendant and the case which the State was required to present under its indictment. The State's argument that it was essential for it to prove that the officers were not acting arbitrarily is entitled to no weight since presentation to the jury of the fact that a search warrant for the premises had been issued fully satisfied the State's needs.
The State argues "that defendant cannot control the State's presentation of its case to the jury." While that may be true, the court must control such presentation. Even if the evidence were material and relevant, here, Evid.R. 4 required the exclusion of the evidence because of its potential to so severely prejudice the defendant's right to a fair trial. Defendant was *521 by the State's action denied his right to a fair trial, and, if for no other reason, his conviction would have to be reversed.

II.
We turn next to defendant's assertion that "[t]he trial court erred in failing to grant defendant's motion for a judgment of acquittal at the end of the State's case." We are required to sustain the trial judge's denial of a motion to acquit if, "viewing the State's evidence in its entirety, be that evidence direct or circumstantial," and giving the State the benefit of all reasonable inferences, "a reasonable jury could find guilt of the charge beyond a reasonable doubt." State v. Reyes, 50 N.J. 454, 458-59, 236 A.2d 385 (1967); R. 3:18-1. In addition, we do not in applying the Reyes standard, consider any evidence adduced in defendant's case. Reyes, 50 N.J. at 459, 236 A.2d 385; State v. Moffa, 42 N.J. 258, 261, 200 A.2d 108 (1964).
As noted earlier, we accept, with one substantial exception, the State's recitation of the facts presented by it at the trial. We are satisfied that drawing all of the inferences favorable to the State from the State's evidence, a reasonable jury could find no more than that defendant occupied the middle unsecured bedroom of a home inhabited by several family members, and that a substantial quantity of cocaine was found hidden under the mattress of one of two bunk beds.
The issue presented is whether the State made out a prima facie case of possession of the contraband found hidden under the mattress of one of two beds in the room, where the most favorable inference that can be drawn from the proofs is that the defendant, not present in the home at the time the drugs were found, may have, at an undisclosed time, occupied the bedroom. Absent proof that defendant had exclusively occupied the bedroom or was present when the drugs were found or within a short time before, a reasonable jury could not, on these facts, find beyond a reasonable doubt that defendant was in *522 actual or constructive possession of the drugs found hidden in the room.
We note, although it is not necessary to our decision, that the State did not present proof that the room was occupied exclusively by the defendant, or that the bed and mattress under which the drugs were hidden was the one occupied by the defendant. There was no testimony in the State's case regarding whether either or both of the bunk beds appeared to be in regular use, or whether only one person's clothes and belongings were present in the room. Further, no connection was made between the defendant and the plastic bag containing the crack or the paper bag in which the plastic bag was found. No attempt was made to obtain fingerprints or other forensic evidence from the plastic bag although the State's witness, an experienced narcotics investigator, testified that he personally knew that similar plastic bags had been tested for fingerprints on at least two occasions. No narcotics paraphernalia or other related evidence was found among defendant's belongings or identification, and there was no proof connecting defendant to anything in the room other than the identification found on top of the dresser.
In State v. Brown, 80 N.J. 587, 594, 404 A.2d 1111 (1979), our Supreme Court held that in cases of this nature "a meticulous and objective analysis of the evidence is imperative." The Supreme Court noted that defendant was present on the premises at the time when narcotics were found and that "[t]here were other evidential circumstances lending distinctive color to the character of defendant's presence at the scene." The Court distinguished the facts in Brown from the facts in State v. Sapp, 71 N.J. 476, 366 A.2d 334 (1976), rev'g on dissenting opinion below, 144 N.J. Super. 455, 366 A.2d 335 (App.Div. 1975), in that the home in Sapp was three stories with several unrelated people, noting that this factor "weaken[ed] the inference of knowledge and control over household contents otherwise drawable from the fact of occupancy." Id.
*523 Here, defendant was neither present in the room, nor upon the premises. There was no evidence as to when he last occupied the room. Nor was there evidence that he occupied the room exclusively. In short, there was nothing in the State's case from which a jury could "readily draw the inference that the occupant of such premises would have knowledge and control of its contents." Brown, 80 N.J. at 594, 404 A.2d 1111. The Brown Court also noted that "[t]he inference of knowledge and control of the concealed heroin is further strengthened by the presence of other heroin-related materials in the apartment." Id. at 595, 404 A.2d 1111. There was no other drug-related material found in the bedroom here, and no showing of a likelihood that defendant would have knowledge of the hidden contraband.
The Brown Court also noted that "the fact that drugs were found in a bedroom, an area usually only accessible to a resident," also distinguished its case from Sapp where the drugs were found in a dining room. Id. at 596, 404 A.2d 1111. Here, the presence of more than one bed in the unlocked room precludes an inference that defendant had exclusive control of the room. More importantly, no proof was presented here, nor can it be reasonably inferred from the facts presented, that defendant was ever in the bedroom at the same time that the drugs were present. Cf. State v. Palacio, 111 N.J. 543, 554, 545 A.2d 764 (1988) (inference of constructive possession hinged upon proof of the presence of defendant in the area where the drugs were found).
The proofs offered by the State in this case were insufficient to satisfy the required elements for establishing actual or constructive possession of the drugs. Acquittal was therefore required at the conclusion of the State's case. See Hudson v. Louisiana, 450 U.S. 40, 43, 101 S.Ct. 970, 972, 67 L.Ed.2d 30, 33-34 (1981).
Defendant's conviction is reversed. The matter is remanded to the Law Division for entry of a judgment of acquittal.
NOTES
[1] We note one material omission from the State's recitation of the facts. The bed referred to as the defendant's was actually two bunk beds stacked one upon the other. The State did not prove which bed was defendant's. The crack-cocaine had been hidden under the mattress of the lower bed.