723 A.2d 91 (1999)
318 N.J. Super. 137
STATE of New Jersey, Plaintiff-Respondent,
v.
Jose ALVAREZ, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 27, 1998.
Decided February 5, 1999.
*92 Ivelisse Torres, Public Defender, for defendant-appellant (Stephen W. Kirsch, Assistant Deputy Public Defender, of counsel and on the brief).
E. David Millard, Ocean County Prosecutor, for plaintiff-respondent (Andrew M. Megill, Assistant Prosecutor, of counsel and on the brief).
Before Judges LONG, KESTIN and CARCHMAN.
The opinion of the court was delivered by LONG, P.J.A.D.
On February 11, 1997, an Ocean County Grand Jury returned Indictment No. 97-02-143 charging that, on April 6, 1996, defendant Jose Alvarez committed the following indictable offenses: second-degree possession of a weapon (a firearm) for an unlawful purpose, contrary to N.J.S.A. 2C:39-4a (Count One); fourth-degree possession of a prohibited weapon (a dagger), contrary to N.J.S.A. 2C:39-3e (Count Two); fourth-degree possession of a weapon (a dagger) by a convicted person, contrary to N.J.S.A. 2C:39-7a (Count Three); second-degree possession of a weapon (a firearm) by a convicted person, contrary to N.J.S.A. 2C:39-7b (Count Four). Defendant was tried in a bifurcated proceeding pursuant to State v. Ragland, 105 N.J. 189, 519 A.2d 1361 (1986), to avoid the prejudice which could occur when a single jury is called to try a case with several related indictable offenses that have overlapping possessory elements.
Prior to the phase one trial on Counts One and Two, the defendant moved, in limine, to preclude reference to a Parole Board arrest warrant, the execution of which resulted in his arrest. Defendant urged the prosecutor to tell the jurors that the police were at his house to "serve legal papers." The prosecutor claimed this was misleading and confusing, and was willing to delete only the fact that the warrant "was issued by the Parole Board to avoid any reference to prior convictions." He insisted upon reference to an "arrest warrant" in order to justify the police presence at defendant's residence.
The trial judge held:
I have considered the matter.... The applicable rule is Rule 403 and the Court will handle it as follows: (1) The State will not be permitted to refer to a parole warrant. Any references to parole or the fact that Mr. Alvarez may have a prior record or be on probation or parole of any type will be avoided by the State in its case. And the purpose is that the jury need not know about the prior record of Mr. Alvarez and, in fact, the prejudicial value of that clearly would outweigh its probative value.
I will permit the State to refer to the fact that the police were there pursuant to an arrest warrant and reference will be limited to that alone.... It is merely being introduced to explain their presence at the scene and for that purpose alone.[1]
*93 In brief, the testimony at the phase one trial was as follows: On April 6, 1996, members of the Lakewood Police Department went to 101 Coleman Avenue, Lakewood, to serve an arrest warrant on defendant. Detective John Marshall knocked on the front door and identified himself as a policeman. When the door was opened and Detective Marshall saw defendant running up the stairs, he ordered him to stop. Defendant was placed under arrest, handcuffed and was read the Miranda warnings.[2] He was then turned over to Patrolman Pugliese who transported defendant to police headquarters and initiated the booking process.
The police secured the second floor of the premises for a period of two to three hours, during which period they obtained a search warrant for the house, which was executed that evening. In a search, confined to defendant's bedroom, the police found a loaded gun; a picture of defendant's fiancee; a box containing ammunition, in the pocket of defendant's denim jacket; another box of ammunition, in a dresser; a shoulder holster with instructions; a dagger; a long double edged knife; and various mail addressed to defendant.
The State called Guy Barney, the owner of 101 Coleman Avenue, who lived there with defendant and Nigel Samaroo, in order to establish that the room in which the weapons were found was exclusively in defendant's control. Barney stated that although many people were in and out of the house regularly, basically no one else would go into defendant's room unless he was present. Barney also testified that the clothing in the room belonged to defendant. Barney acknowledged that Samaroo used to joke about having a gun but stated that he did not take him seriously. Barney also denied owning a gun or planting a gun in defendant's room.
Two statements by defendant were also admitted on the State's case. According to Patrolman Pugliese, while being booked at police headquarters, defendant told him that he had been "surprised" by the sudden arrival of the police and, if given the chance, would have gone for a weapon so that the police would "shoot him rather than take him to jail." At the Ocean County Jail following his arrest, according to Corrections Officer Kenneth Marshall, Director of the Recreation Department and the brother of Lakewood Detective John Marshall, defendant said, "if I had gotten to my gun, I would have taken your brother out."
The defense theory, as developed in the testimony of various witnesses, was that the premises in which defendant lived was a house for transients; that the room where the police recovered the guns and knives was not defendant's own bedroom, per se; that numerous people had access to the room; that there was no scientific evidence linking the guns and knives to defendant; and that defendant's roommates were angry with him so they made an "anonymous" call to the police and planted the gun in defendant's room to get him arrested and out of the house.
At the end of this testimony, defendant was acquitted on Count One (possession of firearm for an unlawful purpose) and convicted on Count Two (possession of a dagger). Because no special verdict form was used, it is impossible to tell whether the State failed to prove possession or unlawful purpose on Count One.
Prior to the beginning of the phase two trial (Counts Three and Four for possession of weapons by a convicted felon), defense counsel made four requests of the trial judge. First, he asked for an instruction making it clear that, pursuant to N.J.R.E. 404(b) (formerly Evid. R. 55), the prior convictions are not to be used by the jury to show that defendant is a bad person or otherwise predisposed toward crime. Next, he asked to stipulate that defendant had the requisite convictions under N.J.S.A. 2C:39-7b and was not contesting that element, but, rather, was merely challenging the "possession" element of the crimes. The purpose of this request was to keep the details of defendant's prior convictions from the jury. Alternatively, he *94 asked the judge to exclude any reference in the jury charge or otherwise to the armed nature of the defendant's prior robbery conviction, because an unarmed robbery is also a qualifying conviction under N.J.S.A. 2C:39-7. Finally, he requested that the jury not be told to disregard its prior verdicts in the case and, thus, also not be told to "deliberate anew." The judge denied all four applications and ruled that to prove defendant's status, three Judgments of Conviction (armed robbery, escape, distribution of CDS) would be admitted. Thereafter, Detective Marshall and Patrolman Pugliese were called to testify. Their testimony essentially replicated that which was elicited in the phase one trial. The Judgments of Conviction were admitted. Defendant was found guilty on both counts.
After merging the conviction on Count Two with the conviction on Count Three, the trial judge sentenced defendant as follows: on Count Four, to an extended custodial term of 16 years, eight without parole; and on Count Three, to a concurrent custodial term of 18 months, nine without parole. Defendant was also ordered to pay a $150 Violent Crimes Compensation Board penalty, and a $150 Safe Neighborhood Services Fund penalty.
Defendant appeals, contending that the following errors warrant reversal:
POINT I:
THE JURY INSTRUCTIONS ON THE SECOND-DEGREE CRIME OF POSSESSION OF A WEAPON BY A CONVICTED PERSON, N.J.S.A. 2C:39-7b, WERE PLAGUED BY NUMEROUS ERRORS, ALL BROUGHT TO THE ATTENTION OF THE TRIAL JUDGE, BUT IGNORED BY HIM.
A. N.J.S.A. 2C:39-7 Should Not Be Charged To A Jury Without A Standard Instruction That The Evidence Of The Defendant's Prior Convictions Is Admitted Solely As It Bears On An Element Of The Offense And Not To Show The Defendant's Predisposition To Criminal Conduct.
B. Defense Counsel's Offer To Stipulate To The Existence Of The Prior Convictions And Then Sanitize Them Should Have Been Accepted.
C. Defendant's Request To Have The Word "Armed" Deleted From The Defendant's Prior Robbery Conviction Should Have Been Granted.
D. Defendant's Request, Pursuant To State v. Ragland, To Forego The "Ignore Your Prior Verdict And Deliberate Anew" Language Of A Ragland Jury Instruction Should Have Been Granted.
POINT II:
THE STATE IMPROPERLY REFERRED TO THE EXISTENCE OF A SEARCH WARRANT PURSUANT TO STATE v. MILTON. (Not Raised Below).
POINT III:
THE SENTENCE IMPOSED IS MANIFESTLY EXCESSIVE.
We have carefully reviewed this record in light of these contentions and have concluded that a series of errors, alone and in combination, infected these proceedings and denied defendant a fair trial. We thus reverse and remand for a new trial. This ruling makes it unnecessary to address the sentencing issue raised in Point III of defendant's brief.

I
We begin our analysis with defendant's arguments addressed to the phase one trial. He contends that the reference to a search warrant in the police testimony violated State v. Milton, 255 N.J.Super. 514, 605 A.2d 757 (1992). We note that this issue was not raised below and thus must be evaluated under the standard of R. 2:l0-2, i.e., was it clearly capable of producing an unjust result. We think it was.
Two warrants were paraded before the jury in this case: a Parole Board arrest warrant and a search warrant for 101 Coleman Avenue. The judge agreed to eliminate references to the Parole Board because it would reveal that defendant had served jail time for a crime. He ruled however that the arrest warrant could be cited as the basis for the police presence at 101 Coleman Avenue. As a result, the following statements were elicited by the State at trial:

*95 Q. [to Detective Marshall] And what were you dispatched to 101 Coleman Avenue to do?
A. Serve an arrest warrant on Jose Alvarez.
....
Q. [to Officer Pugliese] What was the purpose of your being dispatched there?
A. To assist in a warrant arrest.
....
Q. [to Detective Mooney] What was the purpose of being dispatched to that address?
A. To serve an arrest warrant.
....
Q. Who was that to be served upon?
A. Jose Alvarez.
Additionally, the following exchanges took place:
Q. [to Detective Marshall] Did there come a time a little bit later in the evening when a search warrant was obtained for the premises at 101 Coleman Avenue?
A. Yes.
....
Q. Detective, this search conducted by yourself or the other detectives all took place in that one particular bedroom [belonging to defendant]?
A. That's correct.
This colloquy occurred between the prosecutor and Detective Dennis:
Q. Did you take any action to secure the premises:
A. Yes, I did.
Q. What was that?
A. Patrolman Hornak of Lakewood was called and was placed outside of Mr. Alvarez' room.
Q. How did you know it was Mr. Alvarez' room?
A. Mr. Barney advised us that it was Mr. Alvarez' room.
Q. What was Patrolman Hornak's assignment?
A. Not to let anyone in or out of the room.
Q. Did there come a time when you left to go apply for the search warrant?
A. Yes, there was.
Q. You left Patrolman Hornak there?
A. Yes, I did.
Q. How long were you gone?
A. Approximately two and a half, maybe three hours, somewhere in that area.
Q. And when you returned, was Patrolman Hornak still at his post.
A. Yes, he was.
Q. After you got back, who went into Mr. Alvarez' bedroom?
A. Myself, Detective Marshall, Detective Mooney and also Patrolman Hornak.
Q. What did you do?
A. We searched the room.
Further, the prosecutor had the following exchange with Officer Hornack:
Q. What was taking place at l0l Coleman Avenue?
A. They had finished up with an arrest and they went to get a search warrant, so I was supposed to sit at the base of the steps and watch the room so that no one went upstairs.
Q. They had finished the search. Who are you referring to?
A. Lakewood detectives.
Q. Would that be Detectives Dennis, Mooney and Marshall?
A. Yes.
Q. When you arrived at l0l Coleman Avenue, were the detectives still present at the location?
A. They were getting ready to leave.
Q. Did they give you a duty assignment?
A. Yes, they did.
Q. And that was what?
A. To watch the room so no one went upstairs.
Finally, on recall, Detective Dennis was asked the following:
Q. You conducted your search pursuant to a search warrant. Is that correct?
A. That's correct.
....

*96 Q. And then if the judge issues a search warrant, what comes out in the search warrant in terms of yourwhat you are authorized to search for?
As can be seen from these exchanges in addition to the three references to an arrest warrant for defendant, six references to a search warrant (described as being issued by a judge) came directly out of the mouth of the prosecutor.
In Milton, we reversed a conviction due to an improper reference to a search warrant for defendant's person:
The natural inference from the mention of the warrant itself, confirmed by the cautionary instruction of the trial judge, was that sufficient independent proof had been presented to a neutral judge to believe that defendant would be found in possession of drugs.
[Milton, supra, 255 N.J.Super. at 520, 605 A.2d 757.]
In so doing, we held that "[d]efendant was by the State's action denied his right to a fair trial, and, if for no other reason, his conviction would have to be reversed." Id. at 521, 605 A.2d 757. In Milton, we distinguished between a search warrant for the person and one for the premises, the latter not suffering the prejudicial impact of the former. The State argues here that it abided by the letter of Milton because it referred to a search warrant for 101 Coleman Avenue, not for defendant's room. Not so. As the jury heard again and again, while the search warrant was technically for the entire premises, defendant's room was the sole focus of police interest; it was the only room secured and the only room searched. As if those references were not damaging enough, the prosecutor managed to insert into his questions the fact that a judge issued the search warrant, thus suggesting that a judicial officer with knowledge of the law and the facts believed that evidence of criminality would be found in defendant's room.
Further, the repetitive references to the arrest warrant for defendant suffer the exact infirmities we condemned in Milton. The only difference between this case and Milton is that the prejudicial references here were more numerous and more injurious than those we interdicted in that case.
We see no reason why either of these warrants needed to be injected into this case. This is not a case like State v. Battle, 256 N.J.Super. 268, 606 A.2d 1119 (App.Div.), certif. denied, 130 N.J. 393, 614 A.2d 616 (1992), in which the credibility of the officers' account was in issue thus warranting revelation of the information. The trial judge could have acceded to defendant's request that the police testify that they were at l0l Coleman Avenue to "serve legal papers." He also could have advised the jurors that the police were lawfully at the premises or that they should not be concerned as to why the police were there. Any one of these alternatives would have laid the issue of police presence to rest without referring to an arrest warrant. Likewise, after defendant was arrested, all that needed to be said was that his room was searched. There was absolutely no need to refer to a search warrant at all. In short, the references to the arrest warrant (which were challenged below) and to the search warrant (which were not raised below) violated Milton and were clearly capable of producing an unjust result. R. 2:10-2. As a consequence, defendant did not receive a fair trial.

II
We turn next to the errors defendant contends occurred during the phase two trial. He first argues that the failure of the trial judge to give a limiting instruction on the use of his prior convictions was error.
It is "undeniable that the use of prior conviction evidence is fraught with a high risk of prejudice." State v. Brunson, 132 N.J. 377, 385, 625 A.2d 1085 (1993). Thus, whether the State seeks to use "other crimes" evidence for a purpose allowed under N.J.R.E. 404(b) (e.g. motive, intent, identity), or to impeach a testifying defendant, great care must be taken to instruct the jury that it is impermissible to use the prior convictions to demonstrate a predisposition to commit an offense. Brunson, supra, 132 N.J. at 390-91; State v. Cofield, 127 N.J. 328, 341-42, 605 A.2d 230 (1992); State v. Stevens, 115 N.J. 289, 309, 558 A.2d 833 (1989); State v. *97 Sands, 76 N.J. 127, 142 n. 3, 386 A.2d 378 (1978).
The defense here made a specific request of the trial judge to tailor his instructions to ameliorate the prejudice which could accrue from the necessary admission of evidence of defendant's prior record at the trial of the status offense:
[Defense Counsel]: I didn't review the charge with regard to possession of a weapon by a convicted felon, but if there is language in there that indicates they're not to use that to judge the defendant's character or whether he's a good or bad person, simply the fact that there were convictions, if that language is not in there, I would ask the Court to include something similar.
THE COURT: Specifically, what would you be asking the jury be advised?
[Defense Counsel]: Well, the fact that there is a conviction should not sway them one way or the other with regard to any other elements they're to consider for the same reason that we segregate this charge from the first part. We don't want the jury to think that he's a bad person because of convictions and therefore, perhaps taint other portions of the deliberations.
The trial judge responded:
THE COURT: I'm reluctant to begin making any references to the defendant or his character. The fact that there is a Judgment of Conviction is simply an element the State must prove and the jury will be so instructed.
The charge given was as follows:
And thirdly, the State must prove, beyond a reasonable doubt, that Mr. Alvarez is a person who has been previously convicted of the crimes of armed robbery, escape and distribution of CDS. And there are Judgments of Conviction which have been admitted into evidence which are submitted for your consideration as to that third element.
For some reason, the trial judge here apparently believed that the introduction of prior crimes evidence as an "element" of an offense eliminated the need for a limiting instruction. We disagree. Merely because it is allowable to introduce prior crimes evidence to establish an element of N.J.S.A. 2C:39-7, does not mean that this evidence could not be misused by the jury. Thus, just as other permissible uses of prior crimes evidence requires careful limiting instructions, so are such instructions required in a case such as this.
This conclusion is not just theoretically sound. Here, the issue of possession was at the heart of defendant's case before the jury. He claimed that his housemates planted the weapon and set him up. Without a limiting instruction, the jury might well have concluded that defendant's defense was untrue solely because of his prior drug distribution, escape and armed robbery convictions. This is not to suggest that defendant's defense was true or that, with a limiting instruction the jury would have accepted it. We suggest only that without such an instruction, we cannot be sure that the jury did not misuse the evidence. In sum, because the jury was not instructed that the defendant's prior convictions had no place in its deliberations on the issue of whether defendant possessed the weapons in the first place, defendant did not receive a fair trial.

III
We turn next to defendant's claims regarding the level of information conveyed to the jury about his prior record. N.J.S.A. 2C:39-7 provides in relevant part:
a. Except as provided in subsection b. of this section, any person, having been convicted in this State or elsewhere of the crime of aggravated assault, arson, burglary, escape, extortion, homicide, kidnapping, robbery, aggravated sexual assault, sexual assault or endangering the welfare of a child pursuant to N.J.S. 2C:24-4, whether or not armed with or having in his possession any weapon enumerated in subsection r. of N.J.S. 2C:39-1, or any person convicted of a crime pursuant to the provisions of N.J.S. 2C:39-3, N.J.S. 2C:39-4 or N.J.S. 2C:39-9, or any person who has ever been committed for a mental disorder to any hospital, mental institution or sanitarium unless he possesses a certificate of a medical doctor or psychiatrist licensed to practice *98 in New Jersey or other satisfactory proof that he is no longer suffering from a mental disorder which interferes with or handicaps him in the handling of a firearm, or any person who has been convicted of other than a disorderly persons or petty disorderly persons offense for the unlawful use, possession or sale of a controlled dangerous substance as defined in N.J.S. 2C:35-2 who purchases, owns, possesses or controls any of the said weapons is guilty of a crime of the fourth degree.
b. A person having been convicted in this State or elsewhere of the crime of aggravated assault, arson, burglary, escape, extortion, homicide, kidnapping, robbery, aggravated sexual assault or endangering the welfare of a child pursuant to N.J.S. 2C:24-4, whether or not armed with or having in his possession any weapon enumerated in sub r. of N.J.S. 2C:39-1, or a person having been convicted of a crime pursuant to the provisions of N.J.S. 2C:35-3 through N.J.S. 2C:35-6, inclusive; section 1 of P.L.l987, c. 101 (C.2C:35-7); N.J.S. 2C:35-11; N.J.S. 2C:39-3; N.J.S. 2C:39-4; or N.J.S. 2C:39-9 who purchases, owns, possesses or controls a firearm is guilty of a crime of the second degree.
Defendant was charged under N.J.S.A. 2C:39-7(a) with possession of a dagger, a fourth degree offense and under N.J.S.A. 2C:39-7(b) with possession of a firearm, a second degree offense. He contends that the trial judge should have allowed him to stipulate that his prior convictions met the status element of N.J.S.A. 2C:39-7 instead of naming the crimes for which he was convicted (armed robbery, escape and distribution of CDS) to the jury. He argues that the recent decision of the United States Supreme Court in Old Chief v. U.S., 519 U.S. 172, 117 S.Ct. 644, 136 L. Ed.2d 574 (1997)[3] is controlling.
In that case, Johnny Old Chief was involved in a fracas where at least one shot was fired. He was charged, among other things, with violation of 18 U.S.C. § 922(g)(1) which provides that it is unlawful for one "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to "possess [ ] any firearm." Id. at 174, 117 S.Ct. at 647, 136 L.Ed.2d at 584. Old Chief had previously been convicted of assault causing serious bodily injury. He offered to admit that he was "convicted of a crime punishable by imprisonment exceeding one (1) year." This offer was rejected, and the "order of judgment and commitment for Old Chief's prior conviction" was admitted before the jury which convicted him. Id. at 175, 117 S.Ct. at 648, 136 L.Ed.2d at 585. The Court of Appeals affirmed Old Chief's conviction, ruling that the admission of the name of his prior crime was not an abuse of discretion. Old Chief was granted certiorari. The United States Supreme Court held that the trial judge abused his discretion, as a matter of law, when he turned down Old Chief's offer to stipulate to the existence of prior convictions in exchange for their sanitization. "The most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be readily made in a defendant's admission and underscored in the court's jury instructions." Id. at 190-91, 117 S.Ct. at 655, 136 L.Ed.2d at 594.
Given these peculiarities of the element of felony-convict status and of admissions and the like when used to prove it, there is no cognizable difference between the evidentiary significance of an admission and of the legitimately probative component of the official record the prosecution would prefer to place in evidence. For purposes of the Rule 403 weighing of the probative against the prejudicial, the functions of the competing evidence are distinguishable only by the risk inherent in the one and wholly absent from the other.

[Ibid.]
Like the prosecutor here, the United States Attorney in Old Chief argued the primacy of the long recognized right of the State to prove its case as it sees fit, without being precluded from eliciting evidence by a *99 defendant's stipulation. Old Chief rejected this view, concluding that the standard legal maxim that the prosecutor, and hence the court, need not accept any defense stipulation which the prosecutor chooses to reject, see Parr v. United States, 255 F.2d 86, 88 (5th Cir.), cert. den., 358 U.S. 824, 79 S.Ct. 40, 3 L.Ed.2d 64 (1958), "has virtually no application when the point at issue is a defendant's legal status," rather than a factual point which might suffer from a lack of "evidentiary depth" if admitted by stipulation rather than testimony or other evidence. Id. at 175, 117 S.Ct. at 647, 136 L.Ed.2d at 583.
The only issue therefore is whether the differences between the federal convicted felon statute and N.J.S.A. 2C:39-7 cited by the State, are such that the principles enunciated in Old Chief should be viewed as inapplicable. Several other courts have declined to adopt Old Chief solely because of such a distinction. See Maibauer v. State, 968 S.W.2d 502 (Tex.Ct.App.1998); Sisson v. State, 232 Ga.App. 61, 499 S.E.2d 422 (Ga.Ct. App.1998); State v. Hamilton, 486 S.E.2d 512 (S.C.Ct.App.1997). But see State v. Alexander, 571 N.W.2d 662 (Wisc.1997).
It is undeniable that the federal statute is generic in the sense that it identifies qualifying prior convictions by penalty, while N.J.S.A. 2C:39-7 specifies the qualifying convictions by name. However, in our view, the statutes are not jurisprudentially different. Regardless of whether a defendant's status is declared by the class or the name of his prior offenses, the fundamental inquiry is the same under Fed.R.Evid. 403 as it is under N.J.R.E. 403: whether the probative value of informing the jury of the specifics of defendant's prior convictions is substantially outweighed by the countervailing risk of undue prejudice. Like the Court in Old Chief, we think it is. The specifics of defendant's prior crimes have no evidentiary significance beyond a stipulation that defendant falls within the class of offenders our Legislature thought should be barred from possessing weapons. On the other hand, as the Supreme Court in Old Chief noted, a high risk of prejudice is "inherent" in detailing the prior convictions and "wholly absent" in the stipulation. Old Chief, supra, 519 U.S. at ____, 117 S.Ct. at 650, 136 L.Ed.2d at 587-88.
Even without Old Chief, however, we would have reached the same conclusion. In State v. Hardaway, 269 N.J.Super. 627, 636 A.2d 128 (App.Div.1994), we addressed an analogous issue and held that it is the court's obligation sua sponte to determine whether a fact which other crimes evidence is offered to prove can be proved by some other less prejudicial evidence. If so, it should be proved that way. Id. at 629, 636 A.2d 128. That is exactly the situation before us. Defendant's stipulation proves his status as a person who the Legislature thought should not have weapons. Nothing, other than prejudice to his right to fair trial on the issue of whether he possessed weapons on April 6, 1996, can be gained by marching the names of his prior offenses before the jury.
Moreover, the reasoning of Brunson, supra, 132 N.J. at 377, 625 A.2d 1085, is equally applicable in these circumstances, and required sanitization in this case in any event. The armed robbery was a "similar" offense to the one with which defendant was charged. Thus, only its date and sentence were admissible. At the very least, the "armed" element needed to be eliminated as per defendant's request. In sum, the trial judge erred in refusing to allow defendant to stipulate that he had the required convictions under N.J.S.A. 2C:39-7.

IV
The foregoing errors in combination operated to deny defendant a fair trial. State v. Orecchio, 16 N.J. 125, 129, 106 A.2d 541 (1954). While there was evidence in this record which would support a jury verdict of guilt beyond a reasonable doubt, in light of the introduction of repetitive evidence of arrest and search warrants for defendant and the revelation of the labels of defendant's prior crimes to the jury without any limiting instruction, we cannot be sure the verdict is one which is free from taint. We thus reverse and remand the case for a new trial consonant with the principles to which we have adverted.

*100 V

We add this final point. Defendant argues that it was error for the trial judge to refuse to waive the "deliberate anew" language of Ragland upon his request. Ragland addressed
the unique problem that arises when a defendant is charged at the same time with unlawful possession of a weapon and possession of a weapon by a convicted felon. The two charges must be tried separately since proof that defendant was a convicted felon (required in the trial of the latter charge) clearly tends to prejudice the jury in considering the former.
[Ragland, supra, 105 N.J. at 193, 519 A.2d 1361.]
Thus severance is customary and "presumably automatic" where it is requested. Id. at 194, 519 A.2d 1361. An entirely different jury can be empaneled to hear the second charge or the same jury may try both counts sequentially. State v. Ingenito, 87 N.J. 204, 217 n. 6, 432 A.2d 912 (1981). Either way, Ragland requires that the second jury "be instructed in no uncertain terms to consider anew the evidence previously admitted but to disregard completely its prior verdict." Ragland, supra, 105 N.J. at 195, 519 A.2d 1361. Conceding the "make-believe" quality of such an instruction where the same jury considers both counts, Ragland nevertheless held that
the defendant is entitled to that instruction for on the "new" trial, the defendant is entitled to the presumption of innocence and, as a consequence of that, to an instruction that each and every material fact that makes up the crime, including obviously the fact of possession, must be proven by the State beyond a reasonable doubt.

[Ibid.]
Ragland concluded that what is needed in such a matter is a strong instruction to the jury
to disregard its prior verdict of possession (for nothing short of that will suffice unless defendant affirmatively requests that such a charge not be given), advising the jury that it is the State's burden to prove that fact beyond a reasonable doubt, allowing the jury, however, to consider the evidence that had previously been brought before it on the possession charge.

[Id. at 195-96, 519 A.2d 1361.]
Here, because the prior verdict was not guilty of possession for an unlawful purpose, and because it was unknown whether the jury found no possession or no unlawful purpose, defendant asked that the jury not be instructed to disregard it prior verdict. This seems to us to be the exact kind of case Ragland must have had in mind in providing defendants' fail-safe opportunity to avoid the instruction. The denial of the request here appears to be a facial violation of Ragland. Any other interpretation of that case will have to come from the Supreme Court. We need not determine whether, standing alone, this violation is harmful error because, in this case, it is merely one of many errors, some of which we have already declared to warrant reversal.
Reversed and remanded.
NOTES
[1] The trial judge gave the following limiting instruction on the arrest warrant:

You recall that during the trial, the State was permitted to introduce into evidence the fact that the police officers went to l0l Coleman to execute an arrest warrant and I explained to you that the State was permitted to introduce the fact of the arrest warrant to explain their purpose or presence and you shouldn't prejudice Mr. Alvarez by virtue of the fact that there was an arrest warrant for him. That shouldn't be viewed by you as considering him a bad person or even that he has a prior conviction, but was admitted for the purpose of explaining why the police were at l0l Coleman.
While this instruction was not challenged, we note that it raises sua sponte the issue of a prior conviction in a context in which a jury would not ordinarily have thought of it. As such this formulation should be avoided.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] See also Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 1226, 140 L.Ed.2d 350 (1998) (citing with approval Old Chief's holding that evidence of the nature of prior crimes carries a high risk of prejudice to a defendant).