**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3345-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TYRONE E. EMMONS, a/k/a
JOHN DOE II, TYRELL GREEN,
TYRONE EDWARDS, and
JASON GREEN,

     Defendant-Appellant.

_____

Submitted January 21, 2020 – Decided February 12, 2020

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 17-04-0478.

Joseph E. Krakora, Public Defender, attorney for appellant (Jaime Beth Herrera, Assistant Deputy Public Defender, of counsel and on the brief).

Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney for respondent (Patrick F.

Galdieri, II, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Tyrone E. Emmons appeals from his jury conviction and sentence for third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(b), and third-degree possession of a controlled dangerous substance (CDS) (heroin), N.J.S.A. 2C:35-10(a)(1). We affirm the convictions and remand for resentencing.

## I.

The trial testimony revealed the following facts. On January 8, 2015, at approximately 9:30 pm, four members of the Woodbridge Police Department arrived at room seventeen of the City Motel in Avenel to "execute a search warrant." Defendant was the "individual [they] were looking to search in that room." Detectives Matthew Herbert and Patrick Harris were wearing tactical vests that displayed "Police" on the front and back; a third officer was in a full uniform. Upon entering defendant's room, the police announced "police" and "search warrant." Defendant emerged from the bathroom, located in the back of the "small" and "cluttered" room. At that point, the police instructed defendant to get on the ground. After defendant failed to comply, the police unsuccessfully attempted to gain control of him and a "struggle ensued."

A-3345-17T4

The police wrestled defendant to the ground and attempted to handcuff him but defendant "kept pulling away[,] tucking his arms under his body and trying to gain a base . . . to push himself back up." Eventually, the police managed to handcuff defendant and then conducted a search incident to arrest. The search revealed forty-eight "wax paper folds" in defendant's sweatshirt pocket, which later tested positive for heroin.

A Middlesex County Grand Jury returned Indictment No. 17-04-0478, charging defendant with third-degree resisting arrest (count one), third-degree possession of a CDS (count two), and third-degree possession with intent to distribute (count three).

In October 2017, defendant was tried before a jury. During trial, the State elicited testimony from Herbert and Harris that referenced the search warrant six times, as follows.

On direct, the State asked Herbert why he was at the City Motel in the Avenal section of Woodbridge Township on January 8, 2015, to which Herbert responded: "To execute a search warrant." Defense counsel objected, arguing that referencing the search warrant was "highly prejudicial" because "[a] warrant presumes that there was an investigation." The judge overruled the objection, stating that he would provide the jury with a limiting instruction.

A-3345-17T4

The State proceeded to ask Herbert what he did upon arrival; Herbert responded he "made entry into the room and . . . announced Police and search warrant." Defense counsel did not object. Upon completion of Herbert's testimony on direct, the judge instructed the jury as follows:

> You heard testimony with regards to the search warrant by this officer. I want you to understand that that testimony's allowed only to show to you or indicate to you that the officers were not acting arbitrarily in this particular instance as per the facts that they testified.
>
> The testimony with regards to the existence of a search warrant is not to be considered by you for any other purpose. That means it's not to be considered by you as to whether or not the State has proven the [d]efendant's guilt beyond a reasonable doubt. It's not being offered for that. It's not allowed for that. You have to disregard it for that.
>
> It's only being allowed so that you can understand . . . how the officers were acting the way they were acting, why . . . they were acting the way th[ey] were acting, and to explain, put into context why they did what they did, and what they did subsequent to being on the premises. Okay?

Harris' testimony followed. When asked why he was at the City Motel that night, Harris responded, to "execute a search warrant." When asked what he and the three other members of the Woodbridge Police Department did upon arriving at room seventeen, Harris replied: "We executed the warrant and entered the room." After testifying he observed defendant in the back of the

4

room, the State asked Harris if he said anything to defendant, to which Harris responded: "Yeah, we[] announc[ed] Police, announc[ed] our presence and purpose, Police, search warrant, loud, clear, repetitive." When asked if he informed defendant that defendant was under arrest, Harris replied, "Yes" "[p]retty much right as we entered the room. Police, search warrant, and we told him to get on the ground, and told him he was under arrest." Defense counsel did not object to any of the four times that Harris referenced the search warrant.

After the State rested, defendant moved for judgment of acquittal on all three counts. The trial court granted the motion in apart, dismissing count three (possession with intent to distribute).

After summations, the judge reiterated that "testimony concerning the execution of . . . a search warrant is only admissible to establish that the police did not act arbitrarily in conducting the search. The execution of a search warrant has no evidential relevance concerning the alleged guilt of an individual." The jury found defendant guilty of counts one and two.

Based on his extensive criminal record, the State moved to sentence defendant as a persistent offender to a discretionary extended term pursuant to N.J.S.A. 2C:43-7(a)(4) and N.J.S.A. 2C:44-3(a), and a period of parole ineligibility pursuant to N.J.S.A. 2C:43-7(b). During the sentencing hearing,

5

the judge noted defendant was forty-one years old, had been adjudicated delinquent as a juvenile six times, and as an adult had been convicted of five disorderly persons offenses and thirteen indictable crimes. One of his convictions was for sexual assault, for which he remained on community supervision for life.

The judge found aggravating factors three (risk defendant will reoffend), six (seriousness of prior criminal record), and nine (need for deterrence), N.J.S.A. 2C:44-1(a)(3), (6), (9). The judge applied great weight to aggravating factor three but did not assign a weight to aggravating factors six and nine. He found the aggravating factors outweighed the mitigating factors.

The judge also found defendant was a persistent offender, noting his offenses began in 1995 and continued thereafter on almost a yearly basis. The court also noted defendant had received probation and had served multiple prison terms. Despite these findings, the judge denied the State's motion to sentence defendant to a discretionary extended term.

The judge concluded consecutive sentences were warranted "because they separate crimes committed on separate offenses, at least with regards to the two indicted matters." The judge noted defendant had never previously received a consecutive sentence. He emphasized that the offenses occurred while

defendant was on community supervision for life. He concluded that a consecutive sentence was "the only thing left to try to impress upon [defendant] that – 1991 to 2017, that a span of criminal activity of almost [twenty-five] years has got to come to an end." The judge also stated, "there's arguably no other way I could have handled the sentence based on my understanding of it." The judge stated he intended "to give the maximum sentence possible that [he] could rationalize."

Defendant was sentenced to a five-year term with a thirty-month parole disqualifier on count one and a consecutive three-year flat term on count two, along with appropriate fees and assessments.[1] This appeal followed.

Defendant raises the following points:

POINT I

REPEATED REFERENCE TO THE FACT THAT POLICE WENT TO EMMONS'S MOTEL ROOM WITH A SEARCH WARRANT WAS HIGHLY

---

[1] Defendant was also sentenced to a concurrent twelve-month flat term for fourth-degree contempt, N.J.S.A. 2C:29-9(a), on count one, as amended, of Indictment No. 16-01-113. Defendant pleaded guilty to that amended charge and was sentenced in accordance with terms of the plea agreement to the twelve-month term. The plea agreement did not specify whether the term was to run concurrently or consecutively. At sentencing, the State argued it should run consecutively because the offense was committed while defendant was on community supervision for life. The court disagreed. Defendant does not challenge that conviction or sentence and the State did not cross-appeal.

PREJUDICIAL AND REQUIRES A REVERSAL OF HIS CONVICTIONS.

POINT II

EMMONS'S SENTENCE OF EIGHT YEARS WITH A 30-MONTH PAROLE DISQUALIFIER IS EXCESSIVE, UNDULY PUNITIVE, AND MUST BE REDUCED BECAUSE THE TRIAL COURT DID NOT MAKE THE PROPER FINDINGS JUSTIFYING CONSECUTIVE SENTENCES AND BECAUSE THE CIRCUMSTANCES SURROUNDING THE RESISTING-ARREST CONVICTION DID NOT WARRANT A DISCRETIONARY PAROLE DISQUALIFIER.

II.

Defendant argues that "[i]t was reversible error for the trial court to permit repeated reference[s] to the search warrant . . . because it was immaterial to the trial and prejudicial to [him]."  We are unpersuaded by this argument.

"Traditional rules of appellate review require substantial deference to a trial court's evidentiary rulings."  State v. Morton, 155 N.J. 383, 453 (1998).  We uphold the trial court's rulings "absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment."  State v. Perry, 225 N.J. 222, 233 (2016) (quoting State v. Brown, 170 N.J. 138, 147 (2001)).  "An appellate court applying this standard should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling was so wide of the mark that a manifest

denial of justice resulted.'" Ibid. (quoting State v. Marrero, 148 N.J. 469, 484 (1997) (internal quotations omitted)). If an abuse of discretion is found, "we must then determine whether any error found is harmless or requires reversal." State v. Prall, 231 N.J. 567, 581 (2018).

A court must exclude "evidence that is otherwise admissible 'if its probative value is substantially outweighed by the risk of . . . undue prejudice, confusion of issues, or misleading the jury.'" State v. Cole, 229 N.J. 430, 448 (2017) (quoting N.J.R.E. 403). Evidence is excluded for being unduly prejudicial only when its "'probative value is so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation' of the issues in the case." State v. Koskovich, 168 N.J. 448, 486 (2001) (alteration in original) (quoting State v. Thompson, 59 N.J. 396, 421 (1971)). "The trial judge has broad discretion to exclude evidence as unduly prejudicial pursuant to N.J.R.E. 403." State v. Nantambu, 221 N.J. 390, 402 (2015).

Citing State v. Alvarez, 318 N.J. Super. 137 (App. Div. 1999), defendant argues Herbert and Harris' use of the term "search warrant," during their testimony, was prejudicial and unnecessary because "the lawfulness of the search [was] not contested." He further argues references to the search warrant

9

were prejudicial because the State failed to present evidence that supported issuance of the warrant and that such failure "essentially [told] jurors that, in getting the warrant, the State presented evidence to the issuing judge that was not introduced at trial, and that that evidence was sufficient to convince the judge that the defendant was likely to be in possession of contraband." Defendant's reliance on Alvarez is misplaced.

In Alvarez, police officers went to the defendant's residence to serve an arrest warrant. 318 N.J. Super at 141-42. That same day, after arresting the defendant the police obtained a search warrant for his home. Id. at 142. A search, which was confined to the defendant's bedroom, revealed various illegal weapons. Ibid. At trial, the State elicited testimony from the police referencing the arrest warrant three times, and personally made "six references to a search warrant (described as being issued by a judge)." Id. at 147. The jury ultimately convicted defendant of weapons charges. Id. at 144.

On appeal, we reversed, stating:

> As the jury heard again and again, while the search warrant was technically for the entire premises, defendant's room was the sole focus of police interest; it was the only room secured and the only room searched. As if those references were not damaging enough, the prosecutor managed to insert into his questions the fact that a judge issued the search warrant, thus suggesting that a judicial officer with knowledge

10

of the law and the facts believed that evidence of criminality would be found in defendant's room.

. . . .

We see no reason why either of these warrants needed to be injected into this case. . . . The trial judge could have acceded to defendant's request that the police testify that they were at [his residence] to "serve legal papers." He also could have advised the jurors that the police were lawfully at the premises or that they should not be concerned as to why the police were there. Any one of these alternatives would have laid the issue of police presence to rest without referring to an arrest warrant. Likewise, after defendant was arrested, all that needed to be said was that his room was searched. There was absolutely no need to refer to a search warrant at all.

[Id. at 147-48.]

Here, unlike in Alvarez, the prosecutor did not "insert into his questions the fact that a judge issued the search warrant, thus suggesting that a judicial officer with knowledge of the law and the facts believed that evidence of criminality would be found in defendant's room." Id. at 148. As our Supreme Court recently noted, the prosecutor is permitted "to convey to the jury that the police were authorized to search a home. . . . The jury should not be left guessing

whether the police acted arbitrarily by entering a home without a search warrant."  State v. Cain, 224 N.J. 410, 433 (2016).[2]

In this matter, the search warrant was referenced six times by two detectives.  However, the prosecutor elicited such testimony to explain that the police were authorized to enter defendant's room and conduct a search.  "A search warrant can be referenced to show that the police had lawful authority in carrying out a search to dispel any preconceived notion that the police acted arbitrarily."  Id. at 435.  Cain instructs that the prosecutor may not repeatedly mention that a search warrant was issued by a judge if doing so creates the likelihood that a jury may draw an impermissible inference of guilt.  Ibid.  That did not occur here.  For the same reason, the State was not required to disclose evidence that supported issuance of the search warrant to justify the elicited testimony.  Accordingly, the trial judge did not abuse his discretion in permitting references to the search warrant.

---

[2]  In Cain, "the prosecutor mentioned the existence of a search warrant no less than fifteen times in the opening statement, summation, and during questioning of witnesses."  224 N.J. at 435.  One reference indicated that a judge had issued the warrant.  Id. at 435-36.  The Court did not, however, determine whether such references constituted plain error because it reversed the lower court's holding on other grounds.  Id. at 436.

Furthermore, the judge cured any potential prejudice caused by references to the warrant by providing a limiting instruction.[3]  In State v. Marshall, the Court stated that "a properly instructed jury will not presume guilt based on the issuance of a search warrant."  148 N.J. 89, 240 (1997).  Recently, however, we addressed the "tension in our case law governing curative and limiting instructions."  State v. Herbert, 457 N.J Super. 490, 503 (App. Div. 2019).  We provided the following factors to consider when determining the adequacy of a limiting instruction: (1) "the nature of the inadmissible evidence the jury heard, and its prejudicial effect"; (2) "an instruction's timing and substance affect its likelihood of success"; and (3) a court's "tolerance for the risk of imperfect compliance."  Id. at 505-08.

Prong one weighs in favor of finding the trial court adequately instructed the jury.  As noted above, Herbert and Harris' references to the search warrant explained that the police were authorized to enter defendant's room and conduct a search.  The prosecutor did not mention the search warrant during the opening statement, summation, or questioning, much less indicate that the warrant was

_____

[3] Notably, the Alvarez court noted the trial judge "raise[d] sua sponte the issue of a prior conviction in a context in which a jury would not ordinarily have thought of it."  318 N.J. Super. at 141 n.1.

issued by a judge. Thus, the warrant references had minimal prejudicial impact, if any.

As for prong two, while the judge did not immediately instruct the jury after defense counsel's initial objection, he did so following completion of Herbert's direct-examination, stating that any reference to a search warrant was "allowed only to show . . . or indicate . . . that the officers were not acting arbitrarily in this particular instance" and that such testimony was "not to be considered . . . for any other purpose," such as whether "the State has proven the [d]efendant's guilt beyond a reasonable doubt." Then, following summations, the judge reiterated his prior instruction, stating that such testimony was "only admissible to establish that the police did not act arbitrarily in conducting the search. The execution of a search warrant has no evidential relevance concerning the alleged guilt of an individual and cannot be considered in that regard during . . . deliberations." We find these instructions were sufficiently timely and substantively adequate.

As for prong three, we find that the risk of jury non-compliance was minimal. The warrant references had little prejudicial impact, if any, and were adequately addressed by way of appropriate limiting instructions. It is presumed the jurors followed these instructions. State v. Loftin, 146 N.J. 295, 390 (1996)

14

(citing State v. Manley, 54 N.J. 259, 271 (1969)); Herbert, 457 N.J. Super. at 503. "The presumption is '[o]ne of the foundations of our jury system.'" Herbert, 457 N.J. Super. at 504 (quoting State v. Burns, 192 N.J. 312, 335 (2007)).

For these reasons, we conclude the references to the search warrant were not unduly prejudicial, were adequately addressed by limiting instructions, and did not result in a manifest denial of justice that deprived defendant of a fair trial. Accordingly, we affirm defendant's convictions on counts one and two.

## III.

Defendant argues that the trial court improperly sentenced him to an excessive and unduly punitive term by imposing a five-year prison term with a thirty-month disqualifier for third-degree resisting arrest and a consecutive three-year sentence for third-degree possession of heroin.

"[Our] review of sentencing decisions is relatively narrow and is governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010). We consider whether the trial court has made findings of fact grounded in "reasonably credible evidence"; whether the factfinder applied "correct legal principles in exercising . . . discretion"; and whether "application of the facts to the law [has resulted in] such a clear error of judgment that it shocks the judicial

15

conscience." State v. Roth, 95 N.J. 334, 363-64 (1984) (citations omitted). We review a trial judge's findings as to aggravating and mitigating factors to determine whether the factors are based on competent, credible evidence in the record. Id. at 364. "To facilitate meaningful appellate review, trial judges must explain how they arrived at a particular sentence." State v. Case, 220 N.J. 49, 65 (2014) (citing State v. Fuentes, 217 N.J. 57, 74 (2014); R. 3:21-4(g) (requiring the judge to state reasons for imposing the sentence, including the factual basis for finding aggravating or mitigating factors affecting the sentence)).

Defendant argues the trial court erred by imposing a consecutive sentence without making the findings mandated by State v. Yarbough, 100 N.J. 627 (1985). We are constrained to agree.

Pursuant to N.J.S.A. 2C:44-5(a), when a defendant receives multiple sentences of imprisonment "for more than one offense[,] . . . such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence." A trial court must apply the following guidelines when determining whether to impose concurrent or consecutive sentences:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;

(2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;

(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

> (a) the crimes and their objectives were predominately independent of each other;
>
> (b) the crimes involved separate acts of violence or threats of violence;
>
> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
>
> (d) any of the crimes involved multiple victims;
>
> (e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense[.][4]

[Yarbough, 100 N.J. at 643-44 (footnote omitted).]

---

[4] Guideline six was superseded by a 1993 amendment to N.J.S.A. 2C:44-5(a), which provides "[t]here shall be no overall outer limit on the cumulation of consecutive sentences for multiple offenses." L. 1993, c. 223, § 1.

The Yarbough guidelines leave "a fair degree of discretion in the sentencing courts." State v. Carey, 168 N.J. 413, 427 (2001). "[A] sentencing court may impose consecutive sentences even though a majority of the Yarbough factors support concurrent sentences," id. at 427-28, but the court must state its reasons for imposing consecutive sentences and, when a court fails to do so, remand is needed in order for the court to place its reasoning on the record, State v. Miller, 205 N.J. 109, 129 (2011). When a trial court imposes a consecutive sentence, "[t]he focus should be on the fairness of the overall sentence." State v. Abdullah, 184 N.J. 497, 515 (2005) (alteration in original) (quoting State v. Miller, 108 N.J. 112, 122 (1987)).

Here, the judge did not sufficiently discuss or weigh the Yarbough factors. In reaching his decision, the judge explained that consecutive sentences were warranted because "resisting arrest was the primary crime of the incident . . . for which officers suffered some harm, if not even minor, as they were attempting to execute a search warrant. And within his control [defendant] was also found to have [CDS]." After noting defendant's extensive and undeterred criminal record, the judge stated that such sentence "is absolutely warranted" and "is the only thing left by way of what a [c]ourt can do in the way of a sentence, to impress upon him that it has to end at this point." Accordingly, because the

18

court did not sufficiently explain why it imposed consecutive sentences, a remand is necessary "for the court to place its reasons on the record." Abdullah, 184 N.J. at 514-15 (citing Miller, 108 N.J. at 122).

On remand, the trial court shall consider the Yarbough factors and provide reasons for the imposition of consecutive sentences. The court's "focus should be on the fairness of the overall sentence." Id. at 515 (quoting Miller, 108 N.J. at 122).

Defendant also argues the court did not make the appropriate findings in imposing the discretionary parole disqualifier on the resisting arrest conviction. We agree.

"N.J.S.A. 2C:43-6(b) . . . gives the sentencing court discretionary authority to impose a period of parole disqualification based on a weighing and balancing of aggravating and mitigating factors." State v. Kiriakakis, 235 N.J. 420, 438 (2018). "[T]he court may fix a minimum term not to exceed one-half of the term" if "the court is clearly convinced that the aggravating factors substantially outweigh the mitigating factors." N.J.S.A. 2C:43-6(b); accord Kiriakakis, 235 N.J. at 443.

Here, the judge imposed a thirty-month parole disqualifier on count one. In reaching his decision, the judge found factors three, six, and nine applicable,

giving "great weight" to factor three. The court did not "assign an appropriate weight" to aggravating factors six and nine. Kiriakakis, 235 N.J. at 442 ("[T]he court must assign an appropriate weight to any established factor."). The judge found no mitigating factors applied and concluded "that the aggravating factors outweigh the mitigating." In support of that finding, the judge stated that over a twenty-five year span, defendant had "been convicted, sentenced, and gone on to reoffend, including when he was on . . . community supervision for life" and "even that did not deter him from committing additional offenses."

At sentencing, defendant argued that mitigating factors one (defendant's conduct did not cause or threaten serious harm), two (defendant did not contemplate his conduct would cause or threaten serious harm), eight (defendant's conduct was the result of circumstances unlikely to reoccur), nine (defendant is unlikely to reoffend), and eleven (imprisonment would entail excessive hardship), applied. N.J.S.A. 2C:44-1(b)(1), (2), (8), (9), and (11). The court found no mitigating factors applied and defendant does not challenge that finding on appeal.

Importantly, the court did not state it was "clearly convinced" that the aggravating factors "substantially" outweighed the mitigating factors.[5] On remand, the trial court shall assign an appropriate weight to aggravating factors six and nine and expressly determine whether it is clearly convinced that the aggravating factors substantially outweigh the mitigating factors.

In sum, we affirm defendant's convictions and remand for resentencing. On remand, the trial court shall make the required findings and express its reasons for its determination whether to impose consecutive sentences on counts one and two and a discretionary parole disqualifier on count one.

Affirmed in part and remanded in part for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] Although the judge included the phrase "clearly convinced" in the judgment of conviction, he did not express that finding during the sentencing hearing. "Where there is a conflict between the . . . judgment of conviction and the sentencing transcript, the sentencing transcript controls." Pressler & Verniero, Current N.J. Court Rules, cmt. 1.8 on R. 3:21-4 (2020) (citing State v. Walker, 322 N.J. Super. 535, 556 (App. Div. 1999)).

A-3345-17T4