**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2210-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANTHONY M. WASHINGTON,
a/k/a RICKY WASHINGTON,

     Defendant-Appellant.

_____

Submitted January 6, 2021 – Decided March 4, 2021

Before Judges Sumners, Geiger, and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 17-08-1775.

Joseph E. Krakora, Public Defender, attorney for appellant (Melanie K. Dellplain, Assistant Deputy Public Defender, of counsel and on the brief).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (John J. Santoliquido, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Anthony Washington appeals his conviction, after a jury trial, of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree possession of a weapon with an unlawful purpose, N.J.S.A. 2C:39-4(d); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); attempted burglary, N.J.S.A. 2C:5-1(a)(1) and N.J.S.A. 2C:18-2(a)(1); and disorderly persons criminal mischief, N.J.S.A. 2C:17-3(a)(1). Considering the record and applicable legal principles, we affirm defendant's conviction but remand the matter for re-sentencing.

We discern the following facts from the trial record. Defendant and D.C.[1] were friends and intermittently dated, most recently, for seven months in 2017. Because defendant engaged in harassing and violent behavior, and often accused D.C. of being unfaithful, D.C. ended the relationship. Thereafter, D.C. reported to police a string of domestic violence incidents perpetrated by defendant.

On April 28, 2017, defendant sucker punched D.C. in the face when she went to his residence to return his belongings. On May 1, 2017, Officer Joseph Akeret, an Absecon Police Department patrol officer, was dispatched to D.C.'s home after she reported someone knocking on the door. While en route Akeret, passed defendant. Because he matched a description given by D.C., he was

---

[1] We refer to the victim by her initials. R. 1:38-3(c)(12).

arrested. On May 22, 2017, Officer Mark Williams, another patrolman in the department was dispatched to D.C.'s residence after she reported someone trying to break into her front door. D.C. identified defendant as the perpetrator.

On the night of May 26, 2017, defendant showed up at D.C.'s home, unscrewed the flood lights outside her house, and kicked down her door. To prevent defendant from entering, D.C. placed a table in front of the doorway as a barricade. D.C. identified the intruder as defendant when he squeezed the right half of his body through the barricade. D.C. called police and Officer Ryan O'Connell, a third patrolman in the Absecon Police Department, was dispatched to investigate. Upon arrival, O'Connell observed the door was slightly ajar and damaged, and the exterior lightbulbs removed from the fixtures as D.C. reported.

D.C.'s landlord went to the residence after the May 26, 2017 incident and saw that the door had been kicked in. He went to the police station to file a complaint against defendant for defiant trespassing and malicious damage to property.

Beginning at 8:47 a.m. on Saturday, May 27, 2017, defendant sent D.C. several Facebook messages. One message read: "I need to know. Did you go to [the police]? Yes or no?" Another message stated: "I can't wait. My next move will be my best move and my last move." In the early morning on May

28, 2017, when D.C. arrived home from a party, she discovered that one of her tires was flat. While D.C. was examining her car, defendant appeared "right in [her] face." D.C. fell and defendant began to stab her in her upper back, hand, and leg. D.C. indicated that she felt like defendant held the knife by its blade so that only the tip of the knife penetrated her. Defendant fled after a resident shouted down at him. He was arrested later that day for aggravated assault arising from the May 26 and May 28, 2017 incidents.

At trial, several of the officers who responded to D.C.'s calls testified. Over defense counsel's objection, Williams testified that he believed D.C.'s account regarding the May 22, 2017 incident. Also, over defense counsel's objection, O'Connell testified that he found D.C. to be credible regarding defendant's attempt to burglarize D.C.'s residence on May 26, 2017. During summation, the prosecutor referred to defense counsel's contention that D.C. self-inflicted her injuries as "silly" and a "crazy conspiracy" theory. The prosecutor also referred to the fact, not previously introduced into evidence, that defendant threw soda on D.C.

Defendant filed a motion for a new trial on several grounds, which was denied in a December 4, 2018 hearing. At the December 12, 2018 sentence, the judge highlighted defendant's criminal record of twenty-nine arrests, seventeen

4

prior convictions, nine of which were for indictable offenses. Defendant also had a history of domestic violence, including four active final restraining orders, and one conviction for domestic violence contempt. Defendant had been released from prison on October 25, 2016.

The judge found that aggravating factor one, N.J.S.A. 2C:44-1(a)(1) (nature and circumstances of the offense) applied because the victim suffered eleven stab wounds.[2] He gave this factor moderate weight. The judge also determined that aggravating factors three, six, and nine applied. N.J.S.A. 2C:44-1(a)(3) (risk of re-offense); (a)(6) (extent of prior criminal record); (a)(9) (need for deterrence). He accorded these factors substantial weight. The judge applied aggravating factor fifteen as well. N.J.S.A. 2C:44-1(a)(15) (offense involved an act of domestic violence and defendant committed at least one act of domestic violence on more than one occasion). The judge gave this factor moderate weight. Finally, the judge found that no mitigating factors existed. In the absence of any mitigating factors, the judge concluded the aggravating factors preponderated.

---

[2] The judgment of conviction omits aggravating factor one, N.J.S.A. 2C:44-1(a)(1), and should be corrected on remand.

5

The judge granted the State's application to impose a discretionary extended term on count two (aggravated assault), and sentenced defendant to fifteen years' imprisonment subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. He merged count three (possession of a weapon with an unlawful purpose), with count two. The judge rejected defendant's request to merge count four (possession of a weapon under circumstances not manifestly appropriate), with count three and, instead, imposed a concurrent one-year sentence. He also sentenced defendant to a consecutive term of imprisonment of five years on count five (attempted burglary). Defendant was credited with time served on count six (criminal mischief).

On appeal, defendant raises the following arguments for our consideration:

> POINT I
>
> THE ATTEMPTED-BURGLARY CHARGE WAS INSUFFICIENT AS IT FAILED TO ADEQUATELY FOCUS THE JURORS' ATTENTION ON [DEFENDANT'S] INTENT AT THE TIME OF HIS ALLEGED ATTEMPTED ENTRY INTO THE [VICTIM'S] HOUSE AND TO INSTRUCT JURORS THAT THERE WERE POTENTIAL NON-CRIMINAL EXPLANATIONS FOR HIS ENTRY. (Not raised below).

POINT II

THE [VICTIM'S] PRIOR CONVICTIONS SHOULD HAVE BEEN ADMITTED TO IMPEACH HER CREDIBILITY, AS THE HIGH NUMBER OF CONVICTIONS REFLECTED A SERIOUS PATTERN OF CRIMINAL ACTIVITY AND THE CONSPIRACY TO COMMIT ROBBERY CONVICTION WAS SERIOUS AND INVOLVED DISHONESTY.

POINT III

THE JURY INSTRUCTION REGARDING EVIDENCE OF [DEFENDANT'S] PRIOR BAD ACTS WAS INSUFFICIENT BECAUSE IT DID NOT TAILOR THE CHARGE TO THE FACTS OF THE CASE, THEREBY FAILING TO INFORM JURORS OF THE PERMISSIBLE LIMITED PURPOSE FOR EACH PIECE OF EVIDENCE.  (Not raised below).

POINT IV

THE STATE ELICITED IMPROPER TESTIMONY THAT [DEFENDANT] WAS ARRESTED FOR AN UNRELATED COMPLAINT AND HAD OUTSTANDING WARRANTS AT THE TIME OF HIS ARREST; THE COURT ERRED IN FAILING TO STRIKE THE TESTIMONY OR TO PROVIDE A LIMITING INSTRUCTION.  (Not raised below).

POINT V

UNDER N.J.R.E. 701, POLICE OFFICERS SHOULD NOT HAVE BEEN PERMITTED TO TESTIFY ABOUT THEIR OPINIONS ON THE [VICTIM'S] CREDIBILITY.

7

POINT VI

DURING SUMMATION, THE STATE IMPROPERLY DENIGRATED THE DEFENSE AND REFERENCED FACTS NOT IN EVIDENCE, DEPRIVING [DEFENDANT] OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

A.  The State's comments during summation that the defense argument was "silly" and a "crazy conspiracy theory" denigrated the defense and thereby constituted impermissible prosecutorial misconduct.

B. The State's comment during summation that [defendant] threw soda at the [victim] was not based on evidence that was before the jury and thereby constituted impermissible prosecutorial misconduct.

POINT VII

THE CUMULATIVE IMPACT OF THE ERRORS DENIED [DEFENDANT] DUE PROCESS AND A FAIR TRIAL.

POINT VIII

[DEFENDANT'S] SENTENCE IS EXCESSIVE BECAUSE THE COURT:  (1) ABUSED ITS DISCRETION IN IMPOSING AN EXTENDED TERM; (2) ERRED IN APPLYING AGGRAVATING FACTOR [ONE] TO THE ATTEMPTED-BURGLARY CHARGE AND DID NOT DISTINGUISH THE CHARGE FROM OTHERS IN ITS CLASS; (3) IMPOSED A $33.00 ASSESSMENT FOR COURT COSTS WITH NO BASIS TO DO SO; AND (4) ERRED IN FAILING TO MERGE HIS

A-2210-18

WEAPONS POSSESSION CHARGES AND ATTEMPTED BURGLARY AND CRIMINAL MISCHIEF CHARGES.

> A. The [fifteen-year] sentence for the aggravated assault offense constituted an abuse of discretion because the facts did not warrant an extended term and the sentencing court did not properly weigh the aggravating factors.

> B. With respect to the attempted[]burglary offense, the sentencing court erred in applying aggravating factor [one] because it did not base this finding on facts related to the attempted[]burglary offense.[3]

> C. The sentencing court improperly imposed a $33.00 assessment for court costs on count six (criminal mischief).

> D. The sentencing court should have merged (i) counts three (possession of a weapon for an unlawful purpose) and four (unlawful possession of a weapon) and (ii) counts five (attempted burglary) and six (criminal mischief).

We address these issues in turn.

Defendant argues the trial judge's instruction for attempted burglary "failed to present [his] version of events" and explain that the jury must acquit

---

[3] It is clear from the record that the judge was applying aggravating factor one, N.J.S.A. 2C:44-1(a)(1), to the aggravated assault count. This point does not warrant further discussion. R. 2:11-3(e)(2).

him "if they found he only intended to collect his belongings." Because defendant did not request the charge be tailored, we review for plain error, only reversing if the error is "clearly capable of producing an unjust result." R. 2:10-2; see also State v. Funderburg, 225 N.J. 66, 79 (2016). Here, the judge's instructions encompassed the elements of burglary, and directly tracked the Model Jury Charge, making his instructions presumptively proper. See State v. Whitaker, 402 N.J. Super. 495, 513-14 (App. Div. 2008); see also Model Jury Charges (Criminal), "Burglary in The Third Degree (N.J.S.A. 2C:18-20)" (rev. Mar. 14, 2016). Moreover, in State v. Robinson, we held:

> where the circumstances surrounding the unlawful entry do not give rise to any ambiguity or uncertainty as to a defendant's purpose in entering a structure without privilege to do so, so long as those circumstances lead inevitably and reasonably to the conclusion that some unlawful act is intended to be committed inside the structure, then specific instructions delineating the precise unlawful acts intended are unnecessary.
>
> [289 N.J. Super. 447, 458 (App. Div. 1996).]

We are convinced that defendant's behavior and conduct–showing up to D.C.'s residence in the middle of the night, unscrewing the exterior flood lights, and kicking down her door–evinced a clear intent to commit some unlawful act once he gained entry. Therefore, we are satisfied the judge committed no error,

10

much less plain error, in failing to instruct the jury on the alleged purpose for defendant's visit to D.C.'s. apartment.

Defendant next argues that the trial judge's refusal to admit D.C.'s remote convictions deprived him of due process and a fair trial. More specifically, defendant contends that D.C.'s six prior convictions, which included five drug offenses and conspiracy to commit robbery,[4] should have been admitted to impeach her credibility. We disagree.

We review a trial court's evidentiary determinations for an abuse of discretion. State v. Buda, 195 N.J. 278, 294 (2008). Where, as here, "more than ten years have passed since the witness's conviction for a crime or release from confinement for it, whichever is later," the conviction is "admissible only if the court determines that its probative value outweighs its prejudicial effect, with the proponent of that evidence having the burden of proof." N.J.R.E. 609(b)(1); see also State v. R.J.M., 453 N.J. Super. 261, 266 (App. Div. 2018) (noting the rule "creates a presumption that a conviction more remote than ten years is inadmissible for impeachment purposes, unless the [party] carries its burden").

---

[4] These offenses occurred between 1996 and 2003. In 1996, D.C. was convicted of conspiracy to commit robbery. D.C.'s most recent conviction occurred in 2003.

A-2210-18

In making this determination, pursuant to N.J.R.E. 609(b)(2), the judge "may consider":

> (i) whether there are intervening convictions for crimes or offenses, and if so, the number, nature, and seriousness of those crimes or offenses,
>
> (ii) whether the conviction involved a crime of dishonesty, lack of veracity or fraud,
>
> (iii) how remote the conviction is in time,
>
> (iv) the seriousness of the crime.
>
> [N.J.R.E. 609(b)(2).]

Guided by these principles, we discern no abuse of discretion in refusing to admit these remote convictions. See State v. Sands, 76 N.J. 127, 144 (1978) ("[t]he key to exclusion is remoteness"). D.C.'s most recent conviction for possession with intent to distribute occurred in 2003, fifteen years before trial. Notwithstanding D.C.'s conviction for conspiracy to commit robbery, our courts have affirmed evidentiary rulings involving similarly serious crimes. See State v. Leonard, 410 N.J. Super. 182, 186, 189 (App. Div. 2009) (no abuse of discretion barring use of prosecution witness's fifteen-year-old conviction of third-degree aggravated assault); see also State v. Minter, 222 N.J. Super. 521, 526-27 (App. Div. 1988) (no abuse of discretion barring use of prosecution

12

witness's twenty-year-old convictions for atrocious assault and battery and carrying a concealed weapon), rev'd on other grounds, 116 N.J. 269 (1989).

Defendant next argues, for the first time on appeal, that the trial judge's instructions as to defendant's prior bad acts was not sufficiently specific because it did not provide any additional details on which specific acts were the subject of this instruction or how these acts illustrated motive and intent.[5] This, according to defendant, deprived him of a fair trial. We are unpersuaded.

Defendant failed to object to the limiting instruction on the grounds of lack of specificity, thus we review the issue for plain error. See R. 2:10-2. Not any possibility of an "unjust result" is sufficient; the error must be "clearly capable of producing an unjust result." R. 2:10-2; see also Funderburg, 225 N.J. at 79.

Here, the judge gave the following instruction:

> The State has introduced evidence of prior bad acts by defendant against [D.C.], which allege assaults and threatening statements. Normally, such evidence is not permitted under our rules of evidence. Our rules specifically exclude evidence that a defendant has

---

[5] In direct contrast to the argument now raised on appeal, defense counsel at trial objected to any "specific reference" to the prior bad acts. Indeed, defense counsel requested that the judge instruct the jury, in generalized terms, that "the State has introduced evidence that . . . defendant engaged in prior bad acts concerning [D.C.] and leave it at that."

committed other crimes, wrongful acts when it is offered only to show that he has a disposition or a tendency to do wrong and, therefore, must be guilty of the charged offenses. Before you can give any weight to this evidence, you must be satisfied that a defendant committed the other wrongful acts. If you are not so satisfied, you may not consider it for any purpose. However, our rules do permit evidence of other crimes, wrongs, acts when the evidence is used for certain specific narrow purposes. Whether this evidence does, in fact, demonstrate a motive and intent is for you to decide. You may decide that the evidence does not demonstrate motive and intent and is not helpful to you at all. In that case, you must disregard the evidence. On the other hand, you may decide the evidence does demonstrate motive and intent and use it for that specific purpose. However, you may not use this evidence to decide if the defendant has a tendency to commit crimes or that he is a bad person; that is, you may not decide that just because a defendant has committed other crimes, wrongful acts, he must be guilty of the present crimes. I have admitted the evidence only to help you decide the specific question of whether the previous incidents exhibit motive and intent. You may not consider it for any other purpose and you may not find the defendant guilty now simply because the State has offered evidence that he committed other wrongs, crimes, or acts.

With respect to the admission of other-crime evidence, courts "must not only caution against a consideration of that evidence for improper purposes, it must through specific instruction direct and focus the jury's attention on the permissible purposes for which the evidence is to be considered." State v. G.S., 145 N.J. 460, 472 (1996). In this case, the judge did exactly that.

14

Next, defendant contends that Officer Ryan Kov impermissibly testified that he was responding to a complaint about defendant's mother wishing to remove her son from the property, and that he improperly referred to the fact defendant was arrested on an outstanding warrant for aggravated assault. We again disagree.

In supporting his position, defendant cites to State v. Cain, 224 N.J. 410 (2016) and State v. Alvarez, 318 N.J. Super. 137 (App. Div. 1999). In Cain, the prosecutor "mentioned the existence of a search warrant no less than fifteen times" throughout the trial and repeatedly emphasized that a Superior Court judge had issued that warrant. 224 N.J. at 435. The Court held that the "constant drumbeat that a judicial officer issued a warrant" went beyond what was necessary to demonstrate that police were acting with lawful authority, and had the "capacity to lead the jury to draw an impermissible inference that the court issuing the warrant found the State's evidence credible." Id. at 436. Similarly, the prosecutor in Alvarez made "three references to an arrest warrant [and] six references to a search warrant," describing both as being issued by a judge. 318 N.J. Super. at 147. The panel found the numerous references to both the arrest and search warrants, coming "directly out of the mouth of the prosecutor[,]" to be needlessly prejudicial. Id. at 147-48.

Unlike the prosecutors in <u>Cain</u> and <u>Alvarez</u>, who made numerous references to the warrants as being issued by a judge, the prosecutor here never elicited that detail from Kov during his testimony. All explicit references to the arrest warrant were made by defense counsel during cross-examination. In that regard, defendant's belated argument is also barred under the doctrine of invited error. <u>See</u> <u>State v. Harper</u>, 128 N.J. Super. 270, 277 (App. Div. 1974) ("Trial errors which were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal.").

Defendant next argues that Williams and O'Connell's testimony that evaluated D.C.'s credibility was improper and warrants reversal. Since defense counsel objected, we apply the harmless error analysis which "requires that there be 'some degree of possibility that [the error] led to an unjust result. The possibility must be real, one sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached." <u>State v. Lazo</u>, 209 N.J. 9, 26 (2012) (alterations in original) (quoting <u>State v. R.B.</u>, 183 N.J. 308, 330 (2005)). We conclude the officers' transient remarks, while clearly improper, were harmless and did not lead "the jury to a result it otherwise might not have reached." <u>State v. Bankston</u>, 63 N.J. 263, 273 (1973) (citing <u>State v. Macon</u>, 57 N.J. 325, 335-36 (1971)).

The prosecutor adduced the following testimony from Williams:

[Prosecutor:]  And what was the reason for responding there?

[Williams:]  We had a call for a – a female caller was reporting a subject was trying to break into her front door.

[Prosecutor:]  Okay. And who was the female caller?

[Williams:]  [D.C.]
[Prosecutor:]  Okay.  And do you know who the male was that she was reporting?

[Williams:]  She identified the – the male subject as [defendant].

[Prosecutor:]  Do you know defendant?

[Williams:]  Not personally, no.

[Prosecutor:]  Okay.  And did you speak with [D.C.]?

[Williams:]  I did.

[Prosecutor:]  Okay.  Can you describe her demeanor?

[Williams:]  Well, she was concerned.  She reported that someone was trying to break into her front door.  She needed to – to barricade herself in even though it was locked.  So she was a little upset.

[Prosecutor:]  Okay.  Did you believe her?

[Williams:]  I did.

[Defense counsel:]  Objection.

A-2210-18

. . . .

[Court:] I'll allow the question.

[Prosecutor:] And did you believe her, Officer?

[Williams:] I did.

[Prosecutor:] Okay. Did you find anyone that night and place him under arrest?

[Williams:] No. We checked the area of the outside of the – of the apartment. We didn't find anybody.

The prosecutor also questioned O'Connell about the May 26, 2017 incident:

[Prosecutor:] And did you speak with [D.C.]?

[O'Connell:] I did.

[Prosecutor:] Without telling me specifically what she said, what was her demeanor at that time?

[O'Connell:] She seemed frightened as she was looking around. Looking past me, not making eye contact – not making eye contact with me. Kind of looking towards the wood line –

[Prosecutor:] Okay.

[O'Connell:] – area.

[Prosecutor:] Did you locate a suspect at that time?

[O'Connell:] No.

[Prosecutor:]  Did you find [D.C.] to be credible at that time?

[Defense counsel:]  Objection.

. . . .

[Court:]  I'll allow the question.

[Prosecutor:]  Did you find [D.C.] to be credible?

[O'Connell:]  Yes.

We do not condone the elicitation of the testimony of the victim's credibility. In this case, however, neither officer opined as to defendant's guilt or innocence, compare State v. Odom, 116 N.J. 65, 77 (1989), nor did they offer opinions that required them to choose between witnesses, compare State v. Frisby, 174 N.J. 583, 593-96 (2002) (disapproving police testimony regarding the innocence of one person and inferentially the guilt of the defendant).

In State v. Bunch, our Supreme Court found objectionable "the following unobjected-to question [posed by the prosecutor] during [defendant's] cross-examination: 'So basically you want this jury to believe that everything that the officers came in here and testified to is untrue?'" 180 N.J. 534, 549 (2004).  The Court agreed "with defendant that the assistant prosecutor should not have asked defendant to assess the credibility of another witness."  Ibid.  (citing Frisby, 174

N.J. at 594). The Court, however, held that "in view of the substantial amount of evidence of defendant's guilt and the trial court's instruction to the jury that it must determine the witnesses' credibility, we conclude that the improper statement was not 'so egregious that it deprived defendant of a fair trial.'" Ibid. (quoting State v. Ramseur, 106 N.J. 123, 322 (1987)).

For similar reasons, Williams and O'Connell's testimony, even if objectionable, did not deprive defendant of a fair trial. As in Bunch, there was ample evidence that supported the jury's verdict. D.C., who was familiar with defendant, plainly identified him as the suspect who was attempting to break into her residence on May 26, 2017 and as the individual who assaulted her on May 28, 2017. The officers' investigations corroborated D.C.'s testimony. O'Connell observed that, on the night of May 26, 2017, the exterior light bulbs outside D.C.'s residence were removed and that the door was damaged. Immediately after the May 28, 2017 assault, D.C. informed two witnesses, Clara Pannell and Tasha Prescott, that defendant was the individual who stabbed her. The jury heard properly admitted testimony about defendant's prior assaults and harassment of the victim. In addition, defendant's own threatening emails on the morning preceding the attack provided both motive and intent, further corroborating the victim's account. Finally, the judge instructed the jury at the

close of trial that they were the exclusive determiner of credibility.  See State v.

Dellisanti, 203 N.J. 444, 462-63 (2010) (holding that a line of questioning which

compelled a defendant to assess the credibility of a State's witness did not

deprive him of a fair trial because the trial judge "provided a full and appropriate

instruction to the jury on how to address credibility").[6]  Based on the

overwhelming evidence of defendant's guilt, any error in admitting the

testimony was harmless.

Defendant also argues the State's summation deprived him of a fair trial

on two separate grounds.  First, defendant contends that the prosecutor

denigrated his argument, characterizing it as a "silly" and "crazy conspiracy

theory."  Second, defendant asserts that the prosecutor referenced a fact not in

evidence–that defendant threw soda at D.C.

New Jersey courts have long recognized prosecutors "are afforded

considerable leeway in making opening statements and summations."  State v.

Williams, 113 N.J. 393, 447 (1988).  Equally clear, however, is the fact that

"prosecutors are not permitted to cast unjustified aspersions on the defense or

---

[6] We presume that the jury followed the judge's instruction.  State v. Burns, 192 N.J.
312, 335 (2007) (holding that "[o]ne of the foundations of our jury system is that the
jury is presumed to follow the trial court's instructions") (citing State v. Nelson, 155
N.J. 487, 526 (1998)).

defense counsel." State v. Rodriguez, 365 N.J. Super. 38, 50 (App. Div. 2003). Prosecutors may not "characterize the defense attorney and the defense as outrageous, remarkable, absolutely preposterous and absolutely outrageous." State v. Acker, 265 N.J. Super. 351, 356 (App. Div. 1993). Even if the prosecutor exceeds the bounds of proper conduct, "[a] finding of prosecutorial misconduct does not end a reviewing court's inquiry because, in order to justify reversal, the misconduct must have been 'so egregious that it deprived the defendant of a fair trial.'" State v. Smith, 167 N.J. 158, 181 (2001) (quoting State v. Frost, 158 N.J. 76, 83 (1999)). In other words, the prosecutor's conduct must "have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." State v. Timmendequas, 161 N.J. 515, 575 (1999).

In response to the suggestion that D.C. fabricated the allegations against defendant and self-inflicted her injuries, the prosecutor characterized that contention as "silly" and a "crazy conspiracy" theory. Viewing the summation in its entirety, the prosecutor's fleeting comments that the defense's theory was a "silly" and "crazy conspiracy," while perhaps better avoided, were not so egregious or unfair that they deprived defendant of a fair trial. See Smith, 167 N.J. at 181. In the same vein, although the prosecutor's reference to a fact not

22

introduced into evidence was improper, see Frost, 158 N.J. at 85, we do not believe the comment that defendant threw soda on the victim was "so egregious that it deprived defendant of a fair trial." State v. Harris, 156 N.J. 122, 194 (1998) (quoting Ramseur, 106 N.J. at 322). Indeed, that fact appears somewhat trivial compared to the other far more serious allegations set forth at trial.

As to his sentence, defendant argues that the trial judge abused its discretion in imposing an extended term. Defendant argues the "facts of the case did not warrant an extended term," and that the judge "placed too much weight on [the] aggravating factors." We disagree.

Pursuant to N.J.S.A. 2C:44-3(a), an extended term is warranted if:

> The defendant has been convicted of a crime of the first, second or third degree and is a persistent offender. A persistent offender is a person who at the time of the commission of the crime is [twenty-one] years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least [eighteen] years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within [ten] years of the date of the crime for which the defendant is being sentenced.

23

The trial judge found, and it is undisputed,[7] that defendant met the statutory criteria under N.J.S.A. 2C:44-3(a). Defendant was forty-two years old at the time of sentencing and had nine prior indictable convictions, the most recent of which was within the last ten years. We therefore conclude the judge did not abuse his discretion in imposing an extended discretionary term of fifteen years. See State v. Pierce, 188 N.J. 155, 169 (2006) ("once the court finds that [the] statutory eligibility requirements are met, the maximum sentence to which defendant may be subject . . . is the top of the extended-term range").

Defendant argues, and the State concedes that count four, fourth-degree unlawful possession of a weapon N.J.S.A. 2C:39-5(d), should have merged into count three, possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d). See State v. Purnell, 394 N.J. Super. 28, 33 (App. Div. 2007); see also State v. Jones, 213 N.J. Super. 562, 568 (App. Div. 1986). We also conclude that count three, possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d), should merge into count two, aggravated assault, N.J.S.A. 2C:12-1(b)(1). See State v. Tate, 216 N.J. 300, 308 (2013) (alterations in original) (quoting State v. Diaz, 144 N.J. 628, 636 (1996)) (explaining that "[w]hen the

---

[7] Trial counsel conceded that defendant was statutorily eligible for a discretionary extended term.

only unlawful purpose in possessing the [weapon] is to use it to commit the substantive offense, merger is required").

Defendant further contends that count six, criminal mischief, N.J.S.A. 2C:17-3(a)(1), should merge with count five, attempted burglary, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:18-2(a). The State, however, argues these offenses should not merge because the damage to D.C.'s door during the attempted burglary was "incidental" to defendant's objective of entering the home to commit an unlawful act. Contrary to the State's position, merger was warranted under these circumstances. See State v. Clarke, 198 N.J. Super. 219, 226 (App. Div. 1985) ("holding criminal mischief is a lesser offense included within attempted burglary").

We likewise agree that the judge mistakenly imposed $33 in court costs as N.J.S.A. 22A:3-4 applies only to municipal courts and proceedings. On remand, the judge shall remove the assessment of court costs on count six.

Affirmed in part; remanded to amend the judgment of conviction and for re-sentencing consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2210-18