**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1513-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TERRI BAILEY, a/k/a
TERRI FRANKLIN, TERRY
BAILEY, and DAVID D. JONES,

     Defendant-Appellant.

_____

Argued November 29, 2021 – Decided January 31, 2022

Before Judges Messano and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 18-08-1277.

Al Glimis, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Al Glimis, on the brief).

Steven K. Cuttonaro, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Steven K. Cuttonaro, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

An Atlantic County grand jury returned an indictment charging defendant Terri Bailey with second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1) (count one); fourth-degree obstructing the administration of law, N.J.S.A. 2C:29-1(a) (count two); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (count three); second-degree certain persons not to possess a firearm, N.J.S.A. 2C:39-7(b) (count four); and first-degree unlawful possession of a handgun by an individual with a prior conviction for a crime enumerated in N.J.S.A. 2C:43-7.2(d),[1] N.J.S.A. 2C:39-5(j) (subsection (j)) (count five).  At trial, before the jury was selected, the State dismissed counts one through four without objection.

The jury convicted defendant of the remaining count, and the State moved to sentence him as a persistent offender pursuant to N.J.S.A. 2C:44-3(a).  The judge granted the State's motion and sentenced defendant to an extended,

---

[1]  N.J.S.A. 2C:43-7.2 is the No Early Release Act, commonly referred to as NERA.

twenty-five-year term of imprisonment, with a twelve-and-one-half year period of parole ineligibility.[2]

Defendant raises the following points for our consideration:

POINT I

THE REPEATED REFERENCE TO THE UNSANITIZED DETAILS OF MR. BAILEY'S PREDICATE CONVICTION DEPRIVED HIM OF A FAIR TRIAL. (Partially raised below)

POINT II

MR. BAILEY'S SENTENCE IS MANIFESTLY EXCESSIVE AND UNDULY PUNITIVE[3]

In a supplemental pro se brief, defendant makes the following arguments:

POINT ONE

THE DEFENDANT DOES NOT HAVE A PREDICATE NERA CONVICTION AS REQUIRED BY N.J.S.A. 2C:39-5(j), THUS HIS CONVICTION AND SENTENCE VIOLATES THE UNITED STATES CONSTITUTION V, VI, VIII, AND XIV AMENDMENTS, AND THE NEW JERSEY STATE CONSTITUTION ART. 1, PAR. 10[.] (Not raised below)

---

[2] The State also moved pursuant to N.J.S.A. 2C:43-6(c), which mandates an extended term of imprisonment for a defendant convicted of certain Chapter 39 crimes if previously convicted of certain crimes enumerated in N.J.S.A. 2C:44-3(d). The judge denied this motion, finding subsection (j) was not one of the Chapter 39 crimes enumerated in N.J.S.A. 2C:43-6(c).

[3] We omitted the subpoints in defendant's brief.

A-1513-19

POINT TWO

BECAUSE THE DEFENDANT WAS NOT TRIED OR CONVICTED FOR A VIOLATION OF SUBSECTION (a), (b), (c), or (f) OF N.J.S.A. 2C:39-5(j), WHICH IS A REQUISITE COMPONENT OF THE STATUTE[,] HIS CONVICTION AND SENTENCE SHOULD BE VACATED[.]  (Not raised below)

POINT THREE

THE DEFENDANT WAS DENIED HIS DUE PROCESS RIGHTS TO A FAIR TRIAL BECAUSE SERGEANT MOYNIHAN TESTIFIED THAT A STILL PHOTOGRAPH OF THE PERPETRATOR OBTAINED FROM THE VIDEO SURVEILLANCE FOOTAGE WAS THE DEFENDANT WHEN THE IDENTITY OF THE PERSON WAS A QUESTION SOLELY FOR THE JURY THEREFORE THE CONVICTION SHOULD BE REVERSED[.] (Partially raised below)

POINT FOUR

THE DEFENDANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN SHE ENTERED INTO A STIPULATION THAT CONCEDED THE DEFENDANT'S GUILT TO THE REQUISITE ELEMENTS OF THE CHARGED OFFENSE, AND SHE FAILED TO SUBJECT THE STATE'S CASE TO AN ADVERSARIAL TESTING THEREFORE THE CONVICTION SHOULD BE REVERSED[.]  (Not raised below)

We have considered these arguments in light of the record and applicable legal standards.  We affirm defendant's conviction and sentence.  However, we

4

remand the matter to the trial court to immediately conduct a hearing on defendant's claim of ineffective assistance of trial counsel.

I.

Before opening statements, the prosecutor and defense counsel advised the judge of two stipulations for her to read to the jury. The parties stipulated defendant "did not have a permit to possess a weapon" on the day in question. The second stipulation was that defendant "ha[d] a prior conviction of [an] enumerated crime in N.J.S.A. 2C:43-7.2, that being kidnapping in the first degree with a date of conviction of November 9th, 1989." The judge asked: "So, you're not going to be introducing any judgment of conviction . . . ?" The prosecutor said she still intended to introduce a redacted version. Defense counsel seemed surprised, stating, "I thought that was the whole point of the stipulation."

Defense counsel told the judge the "certified copy of the judgment of conviction does not delineate the degree of the offense so the stipulation should not either." When the prosecutor pointed out the "degree" was referenced on the second page of the certified copy, defense counsel said she no longer had any objection. Counsel then noted the certified copy contained the "penalties" associated with defendant's sentence, and the prosecutor agreed to redact those

A-1513-19

from the document. After further colloquy, defense counsel reiterated that she only objected to inclusion of the "fines and penalties page" of the certified judgment of conviction.[4]

In her preliminary instructions, the judge told the jury that the parties stipulated defendant was "previously . . . convicted of . . . kidnapping in the first degree with a date of conviction of November 9th, 1989." She also told the jury that it would have "a judgment of conviction which actually will depict the information I just gave you . . . in the jury room for your deliberations." In her opening statement, the prosecutor reiterated defendant's prior conviction was for kidnapping; in her opening statement, defense counsel acknowledged that fact, but told jurors the only relevant issue in the case was identification.

The trial testimony was brief. On March 29, 2018, around 4:52 p.m., Police Officer Thomas Moynihan of the Atlantic City Police Department was dispatched to an address in response to a ShotSpotter alert. While canvassing the area, Moynihan received information that a black male with dreadlocks and a silver car were involved. Moynihan saw three men, one of whom matched the description, near a silver car. At trial, he identified defendant as one of these

---

[4] Defendant's 1989 judgment of conviction for kidnapping is not in the appellate record.

men. Moynihan said on that day, defendant was wearing a gray "hoodie" and black and white baseball cap.

Moynihan observed the men "for a few moments" before approaching. He saw defendant "reach around his waistband, around his hoodie pockets," and Moynihan instructed him to remove his hands from his pockets and stop moving. Defendant refused to comply and "took off running." Moynihan followed. During the chase, Moynihan heard "something hit the ground," and another officer who joined the pursuit, Thomas Gilardi, testified that he saw an automatic handgun fall from the fleeing man's waistband. Gilardi's bodycam video footage documented his recovery of the weapon, and the video was played for the jury. The officers lost the suspect who ran through the entrance gate of and into a housing site; they were unable to locate him.

Moynihan reviewed video surveillance footage in the housing site's security booth near the gate, as well as video from a surveillance camera at a nearby school. Moynihan took still photos of the security booth's video, which he identified for the jury as showing defendant. The officer also identified for the jury the school's video footage. It showed Moynihan approaching three men on the sidewalk, the officer patting down one of the men, and one of the other men fleeing down the sidewalk with Moynihan in pursuit.

7

About ninety minutes later, after speaking with other officers, Moynihan was able to "put the face" of the person he chased to "the name." Several days later, on April 5, 2018, Detective Ermindo Marsini was on surveillance at a location where he believed defendant might be and arrested him.

Michael Holts testified for the defense. Holts was working as a security guard at the housing site on the day in question. He testified defendant was present at the site before police arrived. Holts said defendant was wearing black and gold clothing emblematic of Holts' favorite football team, the Pittsburgh Steelers, not a gray hoodie like the man depicted in the video and described by Officer Moynihan. Another defense witness, Donette Faulkner lived next door to defendant's mother at the housing site, where Faulkner also worked in the security booth. Faulkner testified that when police arrived to look at the video surveillance footage and were in the security booth with her, defendant was present at the site and walked out of the entrance gate.

In summation, defense counsel argued that defendant was not the person shown in the surveillance videos and not the person Moynihan chased. She only briefly mentioned the predicate offense of kidnapping, noting defendant was a juvenile when convicted of that crime. The prosecutor's summation referenced defendant's kidnapping conviction more frequently, but without particular

8

emphasis. The judge's final instructions tracked the model charge. See Model Jury Charges (Criminal), "Unlawful Possession of a Handgun Prior NERA Conviction (First Degree) (N.J.S.A. 2C:39-5(j))" (approved June 11, 2018) (the Model Charge). During the charge, the judge told the jury several times that defendant's predicate NERA conviction was kidnapping.

## II.

Before turning to the arguments raised in Point I of counsel's brief, and Point Four of defendant's pro se brief, we briefly address the remaining points on appeal, none of which merit reversal. Defendant claims he was not previously convicted of a requisite predicate crime under subsection (j) because he was convicted of kidnapping in 1989, before NERA was enacted. In pertinent part, subsection (j) makes it a first-degree crime for anyone previously convicted of a crime listed in subsection (d) of NERA to unlawfully possess a handgun. Subsection (j) does not refer to NERA at all; it only requires that a defendant be previously convicted of a crime listed in N.J.S.A. 2C:43-7.2(d). Defendant was convicted of kidnapping, N.J.S.A. 2C:13-1, a crime enumerated in subsection (d) of NERA. Those facts are undisputed. The argument requires no further discussion. R. 2:11-3(e)(2).

A-1513-19

Defendant contends the jury never convicted him of unlawful possession of a handgun pursuant to N.J.S.A. 2C:39-5(b), one offense for which a conviction is necessary to prove a violation of subsection (j). Even though the State dismissed count one of the indictment, it introduced proof of all the elements of unlawful possession, and the judge's charge instructed the jury that it must find beyond a reasonable doubt: (1) there was a handgun, (2) defendant knowingly possessed the handgun, (3) defendant did not have a permit to possess the handgun, and (4) defendant had a prior conviction of an enumerated offense under N.J.S.A. 2C:43-7.2(d), in this case, kidnapping. The argument requires no further discussion. R. 2:11-3(e)(2).

Defendant argues that Moynihan's testimony identifying him as the man in the video stills and surveillance footage was impermissible lay opinion. Because there was no objection, we review the argument for plain error. R. 2:10-2.

"Lay opinion is admissible 'if it falls within the narrow bounds of testimony that is based on the perception of the witness and that will assist the jury in performing its function.'" State v. Sanchez, 247 N.J. 450, 466 (2021) (quoting State v. Singh, 245 N.J. 1, 14 (2021)). In Sanchez, the Court held the defendant's parole officer "became familiar with defendant's appearance by

meeting with him on more than thirty occasions during his period of parole supervision. Her identification of defendant as the front-seat passenger in the surveillance photograph was 'rationally based on [her] perception,' as N.J.R.E. 701 requires." Id. at 469 (alteration in original). The Court also concluded the parole officer's opinion would assist the jury, because her "contacts with defendant were more than sufficient to enable her to identify him in the surveillance photograph more accurately than a jury could." Id. at 474.

The same is true in this case. Moynihan can be seen in the school surveillance video approaching a group of three men, one of whom he testified was defendant. After being in close proximity with defendant, albeit briefly, Moynihan identified the man seen running away as defendant. Moynihan chased that man, who entered a housing site through a security gate; Moynihan viewed video footage shortly thereafter, taking still photographs of that footage to preserve its images. He testified the man seen in those photographs was defendant, who Moynihan identified in court. There was no error in admitting this testimony.

Lastly, we find no reason to reverse defendant's sentence. An appellate court reviews a sentence "in accordance with a deferential standard." State v. Trinidad, 241 N.J. 425, 453 (2020) (quoting State v. Fuentes, 217 N.J. 57, 70

(2014)).  We defer to the sentencing court's factual findings and should not "second-guess" them.  State v. Case, 220 N.J. 49, 65 (2014).  An appellate court must affirm a sentence "even if [it] would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record."  State v. Grate, 220 N.J. 317, 337 (2015) (quoting State v. Lawless, 214 N.J. 594, 606 (2013)).

The judge found aggravating factors three, six and nine.  See N.J.S.A. 2C:44-1(a)(3) (the risk of re-offense); (a)(6) (defendant's prior criminal history); and (a)(9) (the need to deter defendant and others).  These were amply supported by evidence in the record, including defendant's prior criminal convictions and history of juvenile delinquency.  The judge found no mitigating factors.  She concluded the aggravating factors "clearly and substantially outweigh[ed] the non-existing mitigating factors," and, citing State v. Pierce, 188 N.J. 155 (2006), she determined a discretionary extended term was appropriate.

Defendant contends the judge erred in failing to find mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11), that his imprisonment would result in an excessive hardship to his family.  However, the judge did consider that factor and concluded while "any type of incarceration by any defendant is a hardship,"

there was nothing presented demonstrating a particular hardship in this case. We agree.

While this sentence was harsh, defendant was convicted of a first-degree crime, was indisputably eligible for an extended term as a persistent offender, and the sentence imposed does not shock our judicial conscience.  State v. Tillery, 238 N.J. 293, 323 (2019).

III.

In Point I, defendant contends it was error to permit the jury to know the "unsanitized details" of his prior conviction.  In his pro se brief, defendant contends trial counsel provided ineffective assistance because she stipulated to a prior conviction in the first place and did not put the State to its proofs.  The State argues defendant is barred from raising this argument since counsel agreed to the stipulation and admission of the redacted judgment of conviction. Alternatively, the State contends any error was harmless.

We are unaware of any reported case addressing subsection (j), which was enacted in 2013.  The statute's structure is similar to the "certain persons" statute, N.J.S.A. 2C:39-7(b)(1), which makes it a second-degree crime for any person previously convicted of certain crimes, including kidnapping, to "purchase[],

own[], possess[] or control[]" a firearm.[5]  The model jury charges for both crimes are virtually identical.  We therefore look to case law developed under N.J.S.A. 2C:39-7(b)(1) in addressing defendant's arguments.

Frequently, as in this case, a defendant indicted for violating the certain persons statute is also charged in the same indictment for the possessory weapons offense.  In those circumstances, the trial must be bifurcated, with the jury first considering guilt as to the possessory offense without being told of the prior predicate conviction.  See State v. Ragland, 105 N.J. 189, 194 (1986) ("Severance is customary and presumably automatic where it is requested because of the clear tendency of the proof of the felony conviction to prejudice trial of the separate charge of unlawful possession of a weapon." (emphasis added)).  However, in State v. Brown, the Court held that when the State dismisses the possessory offense and tries the defendant solely on the certain persons count, bifurcation is unnecessary.  180 N.J. 572, 582 (2004).  Critically, to ameliorate "any potential for prejudice," the Court required "sanitization of the predicate offense."  Id. at 584.  The Court held:  "if defendant stipulates to the offense, the jury need be instructed only that defendant was convicted of a

_____

[5]  As noted, defendant was indicted for violating N.J.S.A. 2C:39-7(b) in the dismissed count four of the indictment.

14

predicate offense. If the defendant does not stipulate, then the trial court should sanitize the offense or offenses and limit the evidence to the date of the judgment." Id. at 585.

After Brown, the certain persons model charge was amended:

> In explaining what crimes are set forth as predicate offenses in N.J.S.A. 2C:39-7(b), the model jury charge further explains how to sanitize the record of a defendant's predicate offense. Specifically, the charge notes:
>
> > Unless the defendant stipulates, the prior crimes should be sanitized. Thus, the trial court should refer to them as crime(s) of the appropriate degree. For example, if the offense were aggravated sexual assault, the court would indicate that defendant previously was convicted of a crime of the first degree. Nothing prevents a defendant, however, from choosing to inform the jury of the name of the prior crime of which he/she was convicted.
>
> [State v. Bailey, 231 N.J. 474, 487 (2018) (quoting Model Jury Charges (Criminal), "Certain Persons Not to Have Any Firearms (N.J.S.A. 2C:39-7(b)(1)" at 1 n.4 (rev. June 13, 2005)).]

In Bailey, the defendant refused to stipulate to the predicate offense, and hewing closely to the guidance in Brown and the model charge, the judge redacted the predicate judgments of conviction "so as to include only the date and degree of each offense." 231 N.J. at 478–79 (2018). On appeal, we found

the continued use of the model charge "disquieting," because the State introduced "no proof of any predicate crime"; nonetheless, we affirmed the defendant's conviction finding any error was invited. Id. at 480.

The Court reversed, holding "[t]he over-sanitization called for in the model charge inject[ed] a constitutional defect into any trial on a certain persons offense where a defendant declines to stipulate," because it relieved the State of "prov[ing] that the defendant was convicted of an <u>enumerated</u> predicate offense and later possessed a firearm." Id. at 488. The Court explained:

> If a defendant chooses to stipulate, evidence of the predicate offense is extremely limited: "[t]he most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that . . . bar a convict from possessing a gun[.]" <u>A defendant who stipulates can therefore prevent the State from presenting evidence of the name and nature of the offense.</u> Provided that the stipulation is a knowing and voluntary waiver of rights, placed on the record in defendant's presence, <u>the prosecution is limited to announcing to the jury that the defendant has committed an offense that satisfies the statutory predicate-offense element.</u>
>
> [<u>Ibid.</u> (alterations in original) (emphasis added) (quoting <u>Old Chief v. United States</u>, 519 U.S. 172, 190–91 (1997)).]

However, "[w]hen a defendant refuses to stipulate to a predicate offense under the certain persons statute, the State shall produce evidence of the predicate

16

offense: the judgment of conviction with the unredacted nature of the offense, the degree of offense, and the date of conviction." Id. at 490–91. The Court also concluded the invited error doctrine did not apply "because the error cut mortally into defendant's due process right to have the jury decide each element beyond a reasonable doubt." Id. at 490. The Court referred the matter to its Committee on Model Criminal Jury Charges for revision. Id. at 491.

The Committee's action was swift. The current certain persons model jury charge provides: "If defendant is stipulating to the predicate offense, do not read the crime listed in the Certain Persons count." Model Jury Charges (Criminal), "Certain Persons Not To Have Any Firearms (N.J.S.A. 2C:39-7(b)(1))" at 1 n.3 (revised Feb. 12, 2018) (emphasis added). Citing Brown and Bailey, the charge now instructs judges

> if defendant stipulates to the offense, the jury must be instructed only that defendant was convicted of a predicate offense[]. Defendant's stipulation must be a knowing and voluntary waiver of rights, placed on the record in defendant's presence; the prosecution is limited to announcing to the jury that the defendant has committed an offense that satisfies the statutory predicate-offense element.
>
> [Ibid. n.6 (emphasis added).]

The model charge for subsection (j), however, only provides the following footnote: "If defendant is stipulating to the predicate offense, do not read the crime listed in the Certain Persons count."  Id. at 1 n.1.

We have long recognized that in a prosecution under N.J.S.A. 2C:39-7(b), the court must permit a defendant to stipulate to the predicate conviction.  State v. Alvarez, 318 N.J. Super. 137, 152–54 (App. Div. 1999); see also Old Chief, 519 U.S. at 191 (holding "it was an abuse of discretion to admit the record when an admission was available").  As future Justice Virginia A. Long wrote for our court, "[t]he specifics of defendant's prior crimes have no evidentiary significance beyond a stipulation that defendant falls within the class of offenders our Legislature thought should be barred from possessing weapons."  Alvarez, 318 N.J. Super. at 153.  See Bailey, 231 N.J. at 488 ("[T]he prosecution is limited to announcing to the jury that the defendant has committed an offense that satisfies the statutory predicate-offense element.").  We see no principled reason why these same tenets should not apply to prosecutions under subsection (j).

In this case, however, defense counsel both stipulated that defendant had previously been convicted of a predicate crime enumerated in N.J.S.A. 2C:43-7.2(d) and agreed the jury would be told of the specific crime, kidnapping in the

first degree. Additionally, despite entering a stipulation, counsel only voiced limited objection to introduction of the actual judgment of conviction in evidence, redacted only to delete the "penalties" imposed; during deliberations therefore, the jury had a document stating defendant had been convicted of first-degree kidnapping in 1989.

Undoubtedly, the judge's failure to "sanitize" defendant's kidnapping conviction does not provide a basis to reverse because any error in that regard was invited. See State v. A.R., 213 N.J. 542, 561 (2013) ("Under that settled principle of law, trial errors that 'were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal.'" (quoting State v. Corsaro, 107 N.J. 339, 345 (1987))). And, unlike Bailey, defense counsel's decision in this case did not relieve the prosecutor of the requirement to prove all elements of the offense, a structural error that the Court in Bailey held could not be harmless. As the State argued before us, defendant was free to stipulate and free to choose what that stipulation would be.

Defendant's argument in his pro se brief that trial counsel provided ineffective assistance because she agreed to stipulate to a qualifying predicate crime lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-

3(e)(2). Counsel's decision to stipulate, particularly when the State had a judgment of conviction available for introduction in evidence, made eminent good sense; not so, however, as to counsel's decision to agree to a stipulation that identified the predicate crime and not object to admission of the redacted judgment of conviction that included the same information.

"Generally, ineffective assistance of trial counsel claims are not entertained 'on direct appeal because such claims involve allegations and evidence that [normally] lie outside the trial record.'" State v. Veney, 409 N.J. Super. 368, 386–87 (App. Div. 2009) (alteration in original) (quoting State v. Castagna, 187 N.J. 293, 313 (2006)). "However, when the trial itself provides an adequately developed record upon which to evaluate defendant's claims, appellate courts may consider the issue on direct appeal." Ibid. (quoting Castagna, 187 N.J. at 313). As in Veney, we largely agree that this is such a case.

To prevail on an ineffective assistance of counsel (IAC) claim, a defendant must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 694 (1984), and recognized by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). A defendant must first show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the

20

Sixth Amendment." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687). As to this prong, "there is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' [and t]o rebut that strong presumption, a defendant must establish that trial counsel's actions did not equate to 'sound trial strategy.'" Castagna, 187 N.J. at 314 (quoting Strickland, 466 U.S. at 689). Defense counsel's decision to tell the jury that her client was convicted of first-degree kidnapping, when the actual crime need not have been disclosed, was the result of deficient performance, not sound trial strategy, as the State contends in its supplemental brief.

Additionally, to succeed on an IAC claim, a defendant must prove he suffered prejudice. Strickland, 466 U.S. at 687. A defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52). In general, "only an extraordinary deprivation of the assistance of counsel triggers a presumption of prejudice." State v. Miller, 216 N.J. 40, 70 (2013) (citing Bell v. Cone, 535 U.S 685, 695–96 (2002)).

In Veney, among other things, the defendant was charged with the possessory weapon offense under N.J.S.A. 2C:39-5(b), and the certain persons offense under N.J.S.A. 2C:39-7(b). 409 N.J. Super. at 373. Like here, the prosecutor dismissed all counts of the indictment against the defendant, including count one that charged him with unlawful possession, and tried the case solely on the certain persons offense. Id. at 374. The jury convicted the defendant, but the judge subsequently granted his motion notwithstanding the verdict, finding the defendant's prior conviction was not for one of the statutory predicate crimes. Id. at 375. The defendant then pled guilty to the unlawful possession of a handgun, count one of the indictment. Id. at 376–77.

On direct appeal, the defendant raised an IAC claim. Id. at 377. We rejected the defendant's contention that counsel provided ineffective assistance because prosecution of count one was barred by principles of double jeopardy. Id. at 382. However, we concluded the defendant's subsequent prosecution under count one violated the Code's "mandatory joinder provision," N.J.S.A. 2C:1-8(b), and Rule 3:15-1(b), and was fundamentally unfair. Id. at 384–85. We also determined that the existing record was sufficient to conclude the defendant satisfied the two prongs of Strickland. Id. at 387. We held that defense counsel's failure to move for formal dismissal of count one prior to the

defendant's guilty plea "cannot be deemed trial strategy," and that failure "denied [the] defendant the effective assistance of trial counsel." Id. at 388.

In State v. Allah, the Court considered the defendant's IAC claim on the existing record and concluded that trial counsel's failure to file a meritorious motion to dismiss a second prosecution on double jeopardy grounds demonstrated deficient performance, finding "[n]o assertion of strategy complicates this analysis." 170 N.J. 269, 285 (2002). The Court also found the defendant had been prejudiced, noting "[a]t the very least, had counsel filed the motion, defendant's claim of double jeopardy would have been preserved. Counsel's inaction plainly prejudiced defendant." Id. at 286.

Unlike Veney and Allah, where the defendants were forced to undergo a second trial or enter a guilty plea because of counsel's deficient performance, defendant here received competent representation in all aspects of the trial, but for the admission of evidence that he had been convicted previously of kidnapping in the first degree. Yet, it is indeed difficult to see how permitting the jury to know the nature of defendant's prior conviction, when an avoidable alternative was available, did not affect the outcome of the case. Fritz, 105 N.J. at 58. As we said in State v. Hooper,

> We acknowledge that situations such as the one we confront in this case, where the record on the post-trial

A-1513-19

> motion contains all the facts necessary to establish a prima facie case of ineffective assistance of counsel, are rare. But when circumstances permit, a defendant is entitled to the court's prompt review of the claim.
>
> [459 N.J. Super. 157, 180–81 (App. Div. 2019) (citing <u>Allah</u>, 170 N.J. at 285).]

Nonetheless, because we think it fair defendant and the State have an opportunity to address the IAC claim as now framed in this opinion, we remand the matter to the trial judge to immediately conduct a hearing regarding trial counsel's decisions: 1) to enter into a stipulation that provided the jury with evidence of defendant's prior conviction for first-degree kidnapping; and 2) to consent to admission of a minimally redacted judgement of conviction that included the specific crime.

Although the court may inquire as to counsel's reasons for making these decisions, we have already concluded on this record that those decisions demonstrate deficient performance as a matter of law. The judge shall only consider whether defendant has met the second prong of the <u>Strickland/Fritz</u> standard. We leave the conduct of the hearing, including additional testimony if necessary, to the judge's sound discretion. If considering the strengths and weaknesses of the State's case the judge concludes by a "reasonable probability" that counsel's deficient performance affected the outcome of the trial, <u>Fritz</u>, 105

N.J. at 58, she shall vacate defendant's conviction. Otherwise, we affirm defendant's conviction and sentence.

Affirmed in part; remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION